## STATE v. PAGE.

1. A driving whip is not a deadly or dangerous weapon, within Comp. Laws, § 6678, which declares guilty of a felony a person participating in a riot who carries at the time any species of firearms, or other deadly or dangerous weapon, whereas participating in an ordinary riot is merely a misdemeanor. The instrument carried must be what is known as either a deadly or dangerous weapon *per se*, for offense or defense of the person.

(Opinion filed July 2, 1902.)

Error to circuit court, Kingsbury county. HON. JULIAN BENNETT, Judge.

Fred W. Page was convicted of riot and brings error. Reversed.

*W. A. Lynch* and *G. W. Latin,* for plaintiff in error.

*A. W. Burt,* Attorney General, and *C. S. Whiting,* State's Attorney, for the state.

Corson, J. Upon an information duly filed by the state's attorney of Kingsbury county, the plaintiff in error was tried and convicted of the offense of riot—he at the time being disguised and carrying a dangerous weapon—and was sentenced to imprisonment in the state penitentiary for a period of two years. A motion for a new trial having been denied, the plaintiff in error brings the case to this court upon writ of error, for review. Before finally pleading to the information, the plaintiff in error moved the court to strike from the information the following words: Carrying at the time of said riot a dangerous weapon." Also the following words in said information: "Said Fred Page, then and there at the time of such assembling and at the time of such assault carrying a dangerous weapon, to-wit., a strong and heavy whip, some six feet in length,"—on the following grounds: (1) That a whip is not a dangerous weapon, such as is contemplated by the statute; (2) a weapon such as is contemplated by the statute is a weapon which is *per se* an instrument used for the purpose of offense or defense, and it does not mean an instrument which may become such under certain circumstances. This motion was denied, and exception duly taken. At the conclusion the trial court charged the jury that, in order to convict, it must find that the defendant carried a dangerous weapon, or that he was masked. This portion of the charge is assigned as error, for the reason that the statute does not use the term "masked," but "disguised," in defining riot. The court further instructed the jury: "Under the laws of this state, and also a majority of the states of the Union, it is optional with the defendant whether he go on the stand and testify or not. The law further provides that the fact that he does not go on the stand to testify shall create no presumption against him." This portion of the charge is also assigned as error. It is further assigned as error that the ver-

dict is against the evidence, in that there is no evidence which tends to show that the defendant at any time during said riot charged in the information had or carried a whip of any description, or was otherwise armed with any dangerous weapon, or that he was masked or otherwise disguised.

The first question presented is, did the court err in refusing to strike out the parts of the information specified in the motion? "Riot" is thus defined by the statute: "Any use of force or violence or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot." Section 6677, Comp. Laws. By section 6678 it is provided: "Every person guilty of participating in any riot is punishable as follows: * * * (3) If such person carried at the time of such riot any species of firearms, or other deadly or dangerous weapon, or was disguised, he is punishable by imprisonment in a state prison not exceeding ten years and not less than two." The information in this case was drawn under this subdivision of the section. It will be noticed that the language of the statute is that, if such person carried at the time of such riot "any species of firearms or other deadly or dangerous weapon," he is punishable, etc. It is contended on the part of the plaintiff in error that, in order to bring the case within the provisions of this subdivision, the instrument carried must be what is known as either a deadly or dangerous weapon *per se,* for offense or defense of the person, and that a strong and heavy whip, six feet or more in length is neither a deadly nor dangerous weapon *per se,* within the meaning of the statute. We are inclined to agree with the plaintiff in error in his contention. As will be noticed, the statute is a highly penal one. When the party is found guilty of carrying a deadly or dangerous weapon, or is disguised, at the time of the commission of

the offense, he is punishable for a felony. One convicted of an ordinary riot, in which no other crime was committed, and in which the party engaged carried no deadly or dangerous weapon, and was not disguised, is declared to be guilty of a misdemeanor. When, therefore, the legislature provided that a person might be found guilty of carrying any species of firearms or other deadly or dangerous weapon, it intended that the weapon so designated as "firemars or other deadly weapon" should be such a weapon as the court could say, as a matter of law, was a deadly or dangerous weapon. In the ordinary use of language, no person would speak of a driving whip as a deadly or dangerous weapon. It is true, it may be used in such a manner as possibly to produce death or very serious bodily injury. So can an ordinary pocketknife, or almost any other instrument in ordinary use, but it does not therefore follow that they are to be designated as "deadly or dangerous weapons." Webster defines "weapon" as follows: "An instrument of offensive or defensive combat; * * * anything used or designed to be used in destroying, defeating or injuring an enemy; as a gun, or sword." Bouvier defines "weapon" as follows: "An instrument of offensive or defensive combat." It will thus be seen that the term "weapon" itself indicates that it is an instrument for offense or defense of a person, and that it cannot be extended to include mere ordinary instruments not used for any such purpose. It will be noticed by the terms of the section of the statute quoted that it is not necessary that the weapon should have been used in the riot in any manner. It is sufficient that the weapon is carried by the party. Hence it is for the court to determine in such a case whether the instrument carried is or is not a deadly or dangerous weapon, within the meaning of the statute. Where an instrument has been used in causing the death or serious bodily injury of a party, the question of whether or not

it was a dangerous or deadly weapon by reason of the manner in which it was used may be a question for the jury to determine. State v. Hammond, 14 S. D. 545, 86 N. W. 627. So conflicting have been the decisions upon the question of what constitutes a dangerous weapon, it is somewhat difficult to deduce from the authorities any general rule upon the subject. Apparently the best considered and reasoned case is the quite recent case of State v. Nelson, 38 La. Ann. 942, 58 Am. Rep. 202, decided by the supreme court of Louisiana. In that case it was held that a razor was not a dangerous weapon, within the meaning of the section against carrying concealed weapons, which reads as follows: "Whoever shall carry any weapons, concealed on or about the person, such as bowie-knives, pistols, dirks, or any other dangerous weapon, shall, on conviction," etc. In the opinion the learned court says: "In our opinion, the meaning of the statute unmistakably, is the carrying of a weapon *eo nomie,* and concealed. It must be a dangerous weapon *per se,* such as a bowie knife, pistol, or dirk; and this must affirmatively appear upon the face of the indictment itself. If it does not, it is bad, and cannot support a conviction. We do not regard the particular purpose to which the instrument is applied as exercising control over its character as a weapon. Whether the instrument named is a weapon, the trial judge should decide, on a motion to quash, as upon every other essential ingredient of an indictment. * * * A razor is an instrument or implement appertaining to the toilet or shop. It has a well-known and specific use, to which it is ordinarily applied. It is not known or usually sold in market as a weapon. It may be quite as easily and conveniently carried in the pocket as a penknife, and when thus carried is effectually concealed from public, open view. Under such circumstances, the concealment of one would be just as pernicious as the other. * * * The lawmaker, in our view,

intended something more reasonable, and only denounced as a crime the carrying concealed dangerous weapons *eo nomine,* and not such articles or instruments as might be used in an assault. * * * The razor might be a weapon if accidentally or actually employed to fight with, as in State v. Lowry, 33 La. Ann. 1224, but it certainly is not such a dangerous weapon as is contemplated by the statute." This decision, it seems to us, lays down the rule applicable to this class of cases, where the charge is not for the commission of some offense by reason of the use of the instrument, but where the gist of the offense consists of carrying or having possession of the instrument or weapon, and where the carrying or having possession constitutes an essential ingredient in the offense. As we have seen, in the case at bar, it is not material whether or not any use was made of the instrument or weapon. The essential ingredient of the offense is that a weapon of the character described in the statute should have been carried by the party charged. It is hardly necessary to state that if, in the course of a riot, any person is killed or injured, or if any other offense known to the statute should be committed, the party engaged in the riot might be convicted, in a proper case, of the offense so committed. And it must be understood, therefore, that we are now discussing the question as to what instrument in a riot is necessary to constitute the carrying of firearms or any deadly or dangerous weapon, which would have the effect of converting a simple misdemeanor into a felony.

We are clearly of the opinion in this case that the court should have granted the motion, and stricken from the information the parts thereof before indicated; and for the error of the court in denying the motion a new trial must be granted. It is true the plaintiff in error might have been convicted under the information in this case even if the parts of the information indicated had been stricken out,

and sentenced to imprisonment in the state penitentiary, upon the ground that he was disguised at the time of the alleged offense. But as it is impossible for this court now to determine upon which ground the jury based its verdict, a new trial must be granted.

These views render it unnecessary to consider the other questions presented by the other assignments of error. The judgment of the circuit court is reversed, and a new trial ordered.