# WILLIAM MARTIN v. STATE.

No. A-406.  Opinion Filed April 18, 1911.

(114 Pac. 1112.)

1. **INDICTMENT AND INFORMATION—Sufficiency of Verification.** An information charging murder, verified by the county attorney, he having no personal knowledge of the facts therein stated, is not in derogation of the defendant's constitutional guaranty that no warrant shall issue but upon probable cause supported by oath or affirmation, where the prosecution was in fact predicated upon the evidence taken upon the preliminary examination, and the action of the examining magistrate in holding the defendant for trial in the district court.

2. **SAME.** In the absence of a statute requiring verification, the county attorney, acting on his official oath, may present an information charging murder, where the defendant, having had a preliminary examination before an examining magistrate, was held to the district court for trial for the felony charged.

3. **TRIAL—Instructions—Requests.** Where the instructions given by the court on a trial for murder contain a correct and comprehensive statement of the law of self-defense applicable to the facts in the case, it is not error to refuse requested instructions substantially the same, differing only in form.

(Syllabus by the Court.)

*Appeal from District Court, Haskell County; Malcolm E. Rosser, Judge.*

William Martin was convicted of manslaughter, and he appeals. Affirmed.

Plaintiff in error was charged by information filed in the district court of Haskell county with the crime of manslaughter. Said information, in substance, charged that on the 27th day of December, 1908, he feloniously and with the premeditated design to effect the death of one Pete Folsom, did stab, thrust, cut at, upon, and into the neck of him, the said Pete Folsom, with a certain knife, then and there and thereby inflicting one mortal wound from which he then and there did die.

Upon the trial the jury returned their verdict, finding him

guilty of manslaughter in the first degree, and assessing his punishment at imprisonment for a term of four years. Judgment and sentence in accordance with the verdict was entered on June 18, 1909. An appeal was taken by filing, November 4, 1909, with the clerk of this court a petition in error with case-made attached.

The facts briefly stated are in substance as follows: The defendant, together with Davis Cooper, Davis Perry, and Pete Folsom, the deceased, all Choctaw Indians, were at the home of the defendant's mother. Soon after dark they started to Stigler, distant about one mile. They rode horseback; Davis Perry and Davis Cooper on one horse, and the defendant and the deceased on the defendant's horse. On the way to town they all stopped and drank from a bottle of alcohol. When about halfway, the first two were ahead of the defendant and the deceased. Hearing them quarreling, they rode back and found the defendant on top of the deceased; they took him off and struck a match, and saw that deceased was hurt. Davis Perry said, "We must go for a doctor," and the defendant said, "I'll go for a doctor myself," and took his horse and rode to Stigler, and there met the sheriff and the city marshal, and stated to them 'that he had found a man lying on the road with his throat cut, and that he wanted to get a doctor." The officers asked him who the man was, and he said he did not know; they asked him whether he was a white man or an Indian, and he said that he did not know; he said "that he was riding along and struck a match to light a cigar, and saw some one lying in the road; saw a man lying there with his throat cut and the blood running." The sheriff then asked him, "How come blood on your hat?" He did not answer, and he ordered him put in jail. A doctor was called and with the officers immediately went to the place indicated, and found Pete Folsom with a wound in his neck, bleeding to death. He recognized the sheriff and spoke to him, stating: "Billey killed me; cut my throat. I am going to die." The sheriff searched him and did not find any weapons. He also searched Cooper and Perry, and found a pocket knife, with the point of the blade

broken off, in Cooper's pocket. Folsom was removed to the doctor's office for treatment and there died a few hours later.

The defendant claimed that he did the cutting in his necessary self-defense. As a witness on his own behalf, his testimony as to the circumstances immediately attendant upon the killing was in substance the same as that of Davis Cooper and Davis Perry, witnesses for the state. He testified that all four left Mrs. Martin's together, where they had been drinking, but that he was not drunk. He further testified as follows:

"Q. Begin there and tell the jury how the trouble came up between you and Pete, from where you stopped. A. After we taken the first drink and come on, Pete wanted to go back to the old lady's, and I told him, 'Old lady would not like for us to come back,' and he says, 'Let's go on and catch up with the boys,' and I says, 'Let's don't run the horse; the road is pretty bad; the horse might fall down and hurt us,' and he batted me on the shoulder and says, 'Willie, what do you think of my sparking your sister?' and I says, 'See the old folks; she is of age; I have nothing to do with it.' When I said that, he gritted his teeth, and I says, 'Pete, you have got a family; if you want to go to see any of the rest of the girls, it would be right for you to get a divorce.' That was the last I said until we come to the branch. He got hold of me and got the quart of booze in my bosom. He got hold of my vest and said, 'Billey, God damn you, you don't like me; I will cut hell out of you, you son of a bitch,' and he throwed me off the horse. The horse was on the right of the ditch; road was running close to the ditch, and he throwed me off. I got on top of him—I believe like this; and I got on top of him. I was stepping off him, and he make the remark, 'that he was going to cut me.' That was why I struck him with a knife. I don't know where I cut him. Q. You don't know where on his person you hit him? A. No, sir; just struck him with that knife. Q. Go ahead. A. Then, after I struck him with the knife, we were both in the ditch, and I kicked him over, and I got on the side of him. He was trying to get up, and I got hold of his arm and the boys run up. Cooper got hold of me and pulled me over on the back. Perry grabbed him and held him back, and he said, 'Folsom was hurt,' and some one said, 'Go for the doctor,' and I said, 'I will go and get the doctor myself.' I got on and went to Stigler and stopped in front of the Stocker Drug Store. I inquired for Counterman; some one phoned, and

he was not there.   Q. you heard the statement of some of the officers as to what you said about the matter when you came to town; why did you make those statements?   A. Why, the reason I made those statements I didn't have time to be talking about this thing, because I was in a hurry to get the doctor and help Folsom."

Several witnesses testified that the deceased had the reputation of being quarrelsome when he was drinking.

*Brown & Lawrence*, for plaintiff in error.
*Chas. West*, Atty. Gen., and *Smith C. Matson*, Asst. Atty. Gen., for the State.

DOYLE, JUDGE   (after stating the facts as above).   Various errors are assigned in the petition for a reversal of the judgment, but only three are argued in the brief.   The first is that:   "The court erred in refusing to permit defendant to introduce evidence to show that the county attorney who verified the information had no personal knowledge of the alleged crime."   Upon his arraignment the defendant filed a motion to set aside and quash the information:   "For the reason that neither of the informations are sworn to by a person who knows the facts therein stated to be true, or by a person who has any personal knowledge of any of the facts of this cause."   The defendant thereupon called Joseph W. Foster, the county attorney who verified the informations, as a witness, proposing to prove by him that he had no personal knowledge of the alleged crime.   The court of its own motion refused to permit the witness to answer any question pertaining to his knowledge of the crime, and the defendant excepted.   There is no merit whatever in this assignment.   The case-made not only contains the proceedings had upon the trial, but also the testimony taken in support of the complaint filed before the county judge upon the preliminary examination.   The constitutional requirement of probable cause, supported by oath or affirmation, to authorize the detention of the accused was fully met by the evidence taken upon the preliminary examination without objection on the part of the defendant, and by his having

been held to the district court for trial by the examining magistrate.

In the case of *Henson v. State*, 5 Okla. Cr. ——, 114 Pac. 630, this court said:

"The verification is no part of an information charging a felony, and is therefore not an indispensable requisite. The object of such verification is not, as in misdemeanors, for a showing of probable cause supported by oath or affirmation, to authorize the arrest of the accused, and it is not for the purpose of evidence which is to be weighed and passed upon, but only, as we believe, to secure good faith and as a matter of good form in pleading."

See, also, *In re Talley*, 4 Okla. Cr. 398, 112 Pac. 36.

The remaining assignments relate to instructions requested and refused, and to instructions given. We have examined with care the instructions given and refused. Those given embrace a full and correct exposition of the law bearing upon the facts of the case, and we find no legal objection to the instructions excepted to. The instructions requested and refused relate to the law of self-defense. No useful purpose could be served by a repetition of the same thing in different language, and it was clearly not error for the court to refuse requested instructions which were substantially similar to those given. The record shows that the evidence in the case was received without objection. The facts admitted or conclusively established seem to us to exclude every reasonable doubt as to the justice of the judgment.

In conclusion we simply add that a careful examination of the record discloses that the defendant had a fair and impartial trial in the manner prescribed by law.

Wherefore the judgment of the district court of Haskell county is affirmed.

FURMAN, PRESIDING JUDGE, and ARMSTRONG, JUDGE, concur.