## JOE JONES v. STATE.

No. A-2141.   Opinion Filed February 7, 1916,

(154 Pac. 689.)

1. **HOMICIDE—Assault With Intent to Kill—Instructions—Evidence.** In a prosecution for assault with intent to kill, it was not incumbent on the court to charge the law of assault with intent to do bodily harm, or assault and battery when, under the evidence the defendant was either entirely innocent of any offense whatever, or was guilty of an assault with intent to kill.

2. **PRESUMPTION — Natural Consequences of Acts.** When the intent is the gist of the crime, the presumption that every sane man contemplates, and intends the natural and probable consequences that necessarily result from his acts and conduct though a very important circumstance in making the proof necessary, upon this point, is not conclusive, nor alone sufficient to convict, and should be supplemented by other evidence to avoid a reasonable doubt.

3. **APPEAL—Verdict—Conflicting Evidence.** Where the evidence is conflicting, and that on the part of the state such that, if believed by the jury, a verdict of guilty should result, a conviction will not be set aside on the ground that it is not warranted by the evidence.

*Appeal from District Court, Okmulgee County;*
*Wade S. Standfield, Judge.*

Joe Jones was convicted of assault with intent to kill, and appeals.   Affirmed.

*Eaton & Cowley* and *Crump & Crump,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.    The plaintiff in error, Joe Jones, herein referred to as defendant, was convicted at the District Court of Okmulgee county during the June, 1913, term thereof, on a charge of assault with intent to kill, and his punishment fixed at imprisonment in the state penitentiary for one year and one day.

It appears that defendant and the assaulted party, L. J. Pounds, were farmers living in the neighborhood of the Salt Creek school house in Okmulgee county. The assaulted party was the constable of that township. On the 22nd day of December, 1911, in the evening of that day, certain Christmas exercises were held at that school house for the benefit and amusement of the children of that neighborhood. The constable was requested to be present in order to preserve order, and he did attend. Defendant also attended, together with certain members of his family, among whom was his son, Ernest Jones.

After the exercises had been going on for some time, Ernest Jones and the young man who was with him created a disturbance in the room, and the constable went to them and admonished them to be quiet. The disturbance subsided for a short time, but was afterwards renewed by the parties, and the constable went to them and started to put them out of the house. During his attempt to eject Ernest Jones from the room, Joe Jones, father of Ernest, assaulted Pounds.

The testimony on the part of the state tended to show that the constable had Ernest Jones with his arms around him and was at the rear of Ernest, pulling him out backwards; that he was making no effort to strike, or in any way mistreat him; that defendant, Joe Jones, was in another part of the room and started to the place where the constable and Ernest were, pulling a knife out of his pocket as he went, and making certain threats against the constable. He rushed up to the scene of the assault, as the state's witnesses testified. He reached around his son and stabbed the constable in the back with a knife, the blade of which was three inches or more in length, inflicting a wound that pene-

trated into the lung, causing hemorrhage from the lung, and confining the constable to his bed for some period of time.

As a witness in his own behalf the defendant denied that he stabbed the constable at all, and his witnesses testify that they did not see him stab him, nor did they see a knife in his hands at the time.

The defendant admits that he went to the scene of the difficulty, but says that his only purpose was to separate his son from the constable and to restore order.

The constable, Pounds, died in the February following, but there is no evidence to show whether his death was the result of the wound inflicted on this occasion. Prior to his death, however, a preliminary examination was held, and his testimony was reduced to writing. The physician who attended the deceased testified that the wound was inflicted in a vital spot on the deceased's body, and that it was a serious and probably fatal wound.

The evidence was uncontradicted on part of the defendant. The jury found by their verdict that the weapon used was a deadly weapon.

The first assignment of error is based upon the proposition that the court erred in refusing to submit to the jury the question of an assault with a sharp and dangerous instrument with the intent to do bodily harm, and, also, simple assault and battery.

Justifying this contention counsel contends that the doctrine in *Clemens* v. *State,* 8th Okla. Crim. 452, 128 Pac. 739, is conclusive.

In this counsel is in error for the reason that the proof in the Clemmens case failed to show that the weapon used was a deadly weapon *per se,* and the jury's verdict was silent on that point. In the case at bar the jury specifically found that the weapon used was a deadly weapon. The doctrine of the Clemmens case is not applicable to the facts in this record. Where there is evidence that might tend to lessen the offense, or to reduce the crime to a degree lower than that charged in the

indictment, or information, it is the duty of the trial court at all times to fully instruct the jury as to the law upon such lower degrees, or included offense. But, where there is no evidence to support such lower degree, or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider such questions.

In the case at bar, if the evidence of the state is to be believed, this plaintiff in error was guilty of assault with intent to kill—and nothing less. Upon the other hand, if his testimony must be believed—that is, testimony offered by him in his defense —then, he was guilty of no crime whatever. The jury found that he was guilty of assault with intent to kill—and we believe, correctly so.

See also, *Simms* v. *State,* 4 Tex. Crim. App. 144;

*State* v. *Robb,* 90 Mo. 30, 2 S. W. Rep. 1;

*State* v. *Doyle,* 107 Mo. 36, 17 S. W. Rep. 751;

*State* v. *Barton,* 142 Mo. 450, 44 S. W. Rep. 239.

The next assignment of error is based upon the proposition that the court erred in giving the following instruction to the jury:

"The jury are instructed that on the question of intent, the law presumes a person intends all the natural, probable and usual consequences of his acts, and this presumption of law will always prevail unless from a consideration of all the evidence bearing upon the point, the jury entertains a reasonable doubt as to whether such intent did exist."

This instruction is not a correct statement of the law applicable to the case at bar. When the intent is the gist of the crime, the presumption that every sane man contemplates, and intends the natural and probable consequences that necessarily result from his acts and conduct, though a very important circumstance in making the proof necessary, upon this point, is not conclusive, nor alone sufficient, to convict, and should be supplemented by other evidence to avoid a reasonable doubt. It is, therefore, incumbent upon the state to prove, as a matter of fact,

not only that the act itself was done, but also, that the defendant at the time that he did the same had the specific intent in mind which is required to constitute the crime of assault with intent to kill.

We do not feel warranted, however, in reversing this judgment on the ground that this instruction is erroneous, for the reason that the court gave other instructions on the question of intent, which clarified the matter to a great extent; and, in effect, took away from the jury the presumption that this instruction told them was the rule, which they could entertain as a matter of law.

The legislature of this state has enacted a statute providing that a new trial shall not be granted by any Appellate Court of this state, in any cause, civil or criminal, on the ground of a misdirection of the jury, unless in the opinion of the court in which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional right.

We cannot say, after a careful examination of this record that plaintiff in error was deprived of any substantial right, or that a miscarriage of justice resulted in this case. In fact, we are thoroughly of opinion that a miscarriage of justice would result if a new trial should be awarded, and this plaintiff in error not convicted.

There are other minor irregularities complained of, but we are unable to find from a full and complete examination of the record that error substantially prejudicial was committed.

It is, therefore, the judgment of this court that the judgment of the trial court should be affirmed. And it is so ordered.

DOYLE, P. J., and FURMAN, J., concur.