O. P. JOHNSON *et al.* v. STATE.

No. A-2954.    Opinion Filed Sept. 27, 1919.

(183 Pac. 926.)

1. **RIOT—Statutory Definition of Crime.** The crime of riot is defined by section 2558, Rev. Laws 1910. Subdivisions 3 and 4 of section 2559, Rev. Laws 1910, contain no definition of the crime of riot.

2. **APPEAL AND ERROR—Prejudicial Error—Instructions—Riot.** For instruction held to be not prejudicial to the defendants under the evidence in this case, see body of opinion.

3. **TRIAL—Instructions—Refusal.** It is not error for the trial court to refuse to give a requested instruction, although it may contain a correct statement of the law, if the principles stated therein have already been covered in the general instructions.

4. **SAME.** It is not error to refuse a requested instruction not applicable to the issues.

5. **APPEAL AND ERROR—Harmless Error—Impaneling Jury.** Where the record shows that all the jurymen composing the regular panel were present and in attendance upon the court, and that all of such jurymen were examined upon their voir dire before an open venire was issued for additional jurymen, the refusal of the trial judge to have all the jurors in the regular panel called, as provided in section 5828, Rev. Laws 1910, when the case is called for trial, is not reversible error, because the purpose of said statute is to enable the state and the defendant to select the trial jury from the members of the regular panel as far as possible before the issuance of an open venire or an order for the drawing of additional jurors. When it is clear that the defendant was not deprived of any substantial right or privilege by the alleged misconduct of the trial court, the judgment of conviction will not be reversed for that reason.

*Appeal from District Court, Cherokee County; John H. Pitchford, Judge.*

O. P. Johnson, Albert Pitts, and Phillip Halpain were each convicted of the crime of riot, and each appeals. Judgment affirmed.

*Bruce L. Keenan,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Cherokee county, wherein the defendants, O. P. Johnson, Albert Pitts, and Phillip Halpain, were each convicted and sentenced to two years imprisonment upon a joint trial for the crime of riot.

The charging part of the information is as follows:

"That is to say, the said O. P. Johnson, Albert Pitts, Jack Wagner, and Phillip Halpain did, in Cherokee county and state of Oklahoma, on or about the 26th day of June, 1916, then and there being, then and there wilfully, unlawfully, feloniously, and riotously assemble to commit an assault and battery upon the person of W. H. Philpott, and the said O. P. Johnson, Albert Pitts, Jack Wagner, and Phillip Halpain, by the use of force and violence and acting in concert, then and there did assault, strike, bruise, beat, wound, and maltreat the said W. H. Philpott, and they, the said O. P. Johnson, Albert Pitts, Jack Wagner, and Philip Halpain, being then and there armed with dangerous and deadly weapons, to wit, certain pistols, and disguised, did then and there, in the manner and by the means aforesaid, unlawfully, wilfully, intentionally, and feloniously commit the crime of riot, contrary to the form of the statutes in such cases made and provided."

Jack Wagner, who was jointly tried with these defendants, was acquitted.

Riot is defined by section 2558, Revised Laws 1910, as follows:

"Any use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot."

The punishment for riot is fixed according to the circumstances under which the participants committed the crime; section 2559, *Id.*, providing the punishment as follows:

"Any person guilty of participating in any riot is punishable as follows:

"First. If any murder, maiming, robbery, rape or arson was committed in the course of such riot, such person is punishable in the same manner as a principal in such crime.

"Second. If the purpose of the riotous assembly was to resist the execution of any statute of this state or of the United States, or to obstruct any public officer of this state or of the United States, in the performance of any legal duty, or in serving or executing any legal process, such person is punishable by imprisonment in the penitentiary not exceeding ten years and not less than two.

"Third. If such person carried at the time of such riot any species of firearms or other deadly or dangerous weapon, or was disguised, he is punishable by imprisonment in the penitentiary not exceeding ten years and not less than two.

"Fourth. If such person directed, advised, encouraged or solicited other persons who participated in the riot to acts of force or violence, he is punishable by imprisonment in the penitentiary for not exceeding twenty and not less than two years.

"Fifth. In all other cases such person is punishable as for a misdemeanor."

The prosecuting witness, W. H. Philpott, testified that he was a member of an organization known as the Working Class Union; that on the night of June 26, 1916, he attended a meeting of a local of this organization held at the Lost City schoolhouse, in Cherokee county; there were about 20 or 25 members of the organization present at that meeting; that some time between 10 and 11 o'clock in the evening, after the meeting had been in progress some two or more hours, five masked men entered the schoolhouse, and by force took the said Philpott therefrom out into the schoolhouse yard, where four of the number held him, while the fifth member beat him over the body with a piece of wet rope, administering some 30 licks; that these parties wore masks over their faces, and were armed with pistols and re-

volvers; that he was armed with a pistol, but that the said parties took his gun away from him before he was taken from the schoolhouse. Philpott further testified that he was well acquainted with Halpain, Pitts, Johnson, and Wagner, and recognized them by their actions and by hearing some of them talk; that he had known each of these parties some four or five years. The fifth party, Philpott, said he did not know.

Halpain, Pitts, and Wagner relied upon alibis as a defense, while Johnson admitted that he was present at the meeting of the lodge at the Lost City schoolhouse on that occasion but testified that he did not leave the schoolhouse, took no part in the alleged riot, nor did he in any manner advise, direct, encourage, or solicit the participants to use force or violence.

Among other instructions given was the following:

"No. 6. You are instructed that if you believe and find from the evidence in this case, beyond a reasonable doubt, that the defendants, or any three or more of them, in Cherokee county, Okla., and on or about the date alleged in the information, or within three years next before the filing of the information against them in court, without authority of law, feloniously combined together, acting in concert and in pursuance of a common design and intent, by means of force or violence, or by any threat to use force or violence, accompanied by immediate power of execution, and carried at the time any firearms or other deadly or dangerous weapons or were disguised by means of masks or otherwise, entered the schoolhouse mentioned in the evidence, where a congregation of people were in attendance, and took therefrom the prosecuting witness, Philpott, against his will and by the means just stated, it would be your duty to find the defendants, or such of them as you believe beyond a reasonable doubt aided in committing the offense, if

the number so committing the offense amounted to three or more, guilty as charged in the information, and to assess their punishment in the penitentiary for not less than two years nor more than ten years; provided, if you further find from the evidence, beyond a reasonable doubt, that the defendants, or any of them, acting in the manner above stated, went further and directed, advised, encouraged, or solicited each other, or any one of them, or any other person so participating in the riot, to acts of violence or force upon the person of the prosecuting witness, then and in that event the punishment for the defendants so directing, advising, encouraging, or soliciting such acts of force or violence would be by imprisonment in the penitentiary for not less than two nor more than twenty years."

Counsel for defendants strenuously complain of the foregoing instruction insisting that by the giving of the instruction the court authorized the jury to find either of the defendants not only guilty of participating in the riot, while armed with dangerous weapons or under disguise, but also authorized the jury to find either of the defendants guilty of inciting a riot, which it is claimed under our statutes is a separate and distinct offense.

We do not believe that instruction No. 6 is subject to the criticism made by defendants' counsel, nor do we believe that it was the intention of the Legislature in enacting subdivisions 3 and 4 of section 2559, to define several species or degrees of the crime of riot. The crime of riot is made out upon proof of the elements of that offense defined by section 2558, *supra*. The various subdivisions of section 2559 provide merely rules of evidence which authorized an increased punishment to be imposed upon participants in a riot according to the circumstances under which or the means by which the said offense was committed.

Under our statutes the crime of riot is a felony, because it is such a crime as may be punished by imprisonment in the state penitentiary, and the district court or superior court would have jurisdiction to try offenders charged with riot as defined in section 2558, *supra.* No different or separate offense is created by either of subdivisions 3 or 4 of section 2559, but when any of the facts set out in either of said subdivisions appear in evidence against persons charged with a riot, then the jury or the court assessing the punishment may impose a punishment in accordance with the facts.

For instance, the evidence might disclose that some participants carried at the time of such riot certain firearms; that others were disguised; but the evidence might also disclose that only one of such persons directed, advised, encouraged, and solicited the others to acts of force and violence. If such circumstances as above set forth appear, then the maximum punishment that could be given those who did not direct, advise, encourage, and solicit acts of force and violence would be ten years, while the party who did so direct, etc., would be subject to a maximum punishment of twenty years, although all the participants engaged in the riot and used force and violence in carrying it into effect.

Subdivision 4 of section 2559, *supra,* is intended to reach the leader of the rioters. To be subject to the punishment prescribed by said subdivision, the person must not only be a participant in the riot, but he must be a director, advisor, and solicitor of the others to use force and violence in carrying the purposes of the riot into execution.

In giving instruction No. 6, *supra,* the court not only required the jury to find that these defendants participated in the riot while armed or disguised, but before the maximum punishment of 20 years could be imposed, as set forth in said instruction, they must find that some one or more of said participants directed, advised, or solicited acts of force and violence to be perpetrated. The instruction correctly states the law, but had it been an incorrect statement of the law, in this instance we fail to see wherein any of these defendants could have been harmed. It only authorized the jury to assess an increased punishment. But as each of the defendants was found guilty "as charged in the information," and as the information charged each of them with the crime of riot, with the additional allegation that they carried firearms and were disguised, and only the minimum punishment of two years' imprisonment in the penitentiary, as provided in subdivision 3 of section 2559, was imposed against each, it is evident that instruction No. 6 resulted in no harm to either of these defendants. Had the jury imposed a punishment in excess of ten years against either of the defendants, then it would be evident that as to such defendant the jury found that he directed, advised, encouraged, or solicited the use of force and violence by the others engaged in the riot. But the verdict in this case shows that the jury did not find that either of these participants was the director or leader in the crime. We find no merit in the contention that instruction No. 6 resulted prejudicially to the substantial rights of either of these defendants.

The case of *Gracy v. State,* 13 Okla. Cr. 643, 165 Pac. 442, in which this court held that an accused person

may not be put on trial for the commission of more than one offense at the same time, relied upon by counsel as supporting his contention, is not in point. The facts of that case and instruction given by the trial court in the *Gracy Case* presented an entirely different situation from that in this case. In the *Gracy Case*, two separate and distinct acts of rape committed on the prosecuting witness at different times were permitted to go before the jury, and under the instructions given the defendant could have been convicted of the commission of either act upon the theory that he committed one act himself and aided and abetted another person to commit the other separate act. Not so in this case. Here there is evidence of only one crime committed, and the prosecuting witness testifies that each of these convicted defendants was a participant in that crime. Instruction No. 6 is not open to the criticism that it permits some of the defendants to be convicted of one crime and others of another. Its purpose was for the guidance of the jury in the infliction of punishment, and for that purpose alone.

It is also contended that the court erred in refusing to give the following instruction:

"Gentlemen of the jury the defendant O. P. Johnson has offered evidence to prove that he was in the Lost City schoolhouse during the whole time of the commission of the alleged riot; and you are instructed that you would not be warranted in finding him guilty merely because he was so present in the Lost City schoolhouse during the whole time of the commission of the riot, unless you further find from the evidence, beyond a reasonable doubt, that he was armed with a deadly or dangerous weapon, or was disguised, and was an actual participant in the alleged riot."

The substance of this request is contained in instruc-tion No. 6 given by the court, which requires the jury to find beyond a reasonable doubt that—

"The defendants, or any three or more of them, * * * without authority of law, feloniously combined to-gether, acting in concert and in pursuance of a common design and intent, by means of force or violence, or by any threat to use force or violence, accompanied by im-mediate power of execution, and carried at the time any firearms or other dangerous or deadly weapons, or were disguised by means of masks or otherwise, entered the schoolhouse mentioned in the evidence, where a congre-gation of people were in attendance, and took therefrom the prosecuting witness, Philpott, against his will and by the means just stated, it would be your duty to find the defendants, or such of them as you believe beyond a reas-onable doubt aided in committing the offense, if the num-ber so committing such offense amounted to three or more, guilty as charged in the information."

The instruction given was as favorable to the de-fendant Johnson as the one requested; as under it be-fore the jury would be authorized to convict the defend-ant Johnson, the court instructed that the jury must find beyond a reasonable doubt that three or more of these defendants combined together and acted in concert in the pursuance of a common design to commit this offense; that the jury must have believed beyond a reasonable doubt, before a verdict of guilty could be returned, that the defendant aided in committing the offense; and that the jury is also told in instruction No. 6 that the partic-ipants must have carried at the time firearms or deadly or dangerous weapons, or have been disguised by means of masks or otherwise. The language employed by the court in instruction No. 6 is equally as clear and definite as that contained in the requested instruction. It has

repeatedly been held that it is not error for the trial
court to refuse to give a requested instruction, although
it may contain a correct statement of the law, if the
principles therein stated have already been covered in
the general instructions. *Manning v. State,* 7 Okla. Cr.
367, 123 Pac. 1029; *Moss v. State,* 4 Okla. Cr. 247, 111
Pac. 950; *Smith v. State,* 5 Okla. Cr. 282, 114 Pac. 350;
*Martin v. State,* 5 Okla. Cr. 355, 114 Pac. 1112.

The further contention that the refusal to give the
foregoing requested instruction was particularly prejudi-
cial to the defendant Johnson, in that the proviso con-
tained in instruction No. 6 permitted the jury to convict
such defendant, although not present at the time of the
assault on Philpott, on the ground that he directed, ad-
vised, encouraged, or solicited other persons who partici-
pated in the riot to the use of acts of violence at a time
prior to the commission of the offense, is without merit.
Instruction No. 6 is not open to the construction counsel
contends for. It is clear from a reading of instruction
No. 6 that the trial court, before authorizing the jury to
convict a person under the proviso therein contained,
required that such person be an actual, active participant,
as defined in the first part of instruction No. 6. The
verdicts against each of the defendants show that the
jury found each of them guilty as an actual participant
in the riot in the manner charged in the information.
A consideration of the entire record of the trial of the
case fails to disclose any prejudice to any of the defend-
ants in the refusal of the court to give this requested
instruction.

It is also contended that the court erred in refusing
to give requested instructions Nos. 4 and 6, as follows:

"Request No. 4. You are instructed, gentlemen of the jury, that the defense interposed is what in law is termed an alibi, which means that the defendants at the time the alleged crime was committed were at some other place than the place of the commission of the crime alleged in the information; and you are instructed that if the whole proof raises in your minds a reasonable doubt as to whether these defendants were at the place of the commission of the offense at the time it was committed, or were at a different place, then in that event your verdict should be not guilty."

"Request No. 6. Gentlemen of the jury, the defendants O. P. Johnson, Jack Wagner, Albert Pitts, and Phillip Halpain are charged with the commission of the alleged riot; and you are instructed that by the provisions of the statutes of Oklahoma three or more of these defendants must act together in order to commit the crime of riot as here alleged; a less number than three cannot commit such an offense."

Requested instruction No. 6 was properly refused because the substance of the requested instruction was covered in the general charge of the court and requested instruction No. 4 was properly refused because not applicable to the facts of the case as to defendant Johnson, The court gave an instruction on the defense of alibi applicable to the other defendants. While it is contended that the defendant Johnson relied upon an alibi as a defense, the testimony shows that Johnson, by his own admission, was in the Lost City schoolhouse at the time this riot commenced. His defense was not an alibi, but that he took no part in the riot. No error resulted to either of the defendants in the refusal to give these requested instructions.

It is also contended that the trial court erred in refusing to have all the jurors in the regular panel called

at the request of counsel for defendants at the time the
case was called for trial.   Section 5828, Revised Laws
1910, provides:

"When the case is called for trial, and before draw-
ing the jury, either party may require the names of all
the jurors in the panel to be called, and the court in its
discretion may order that an attachment issue against
those who are absent; but the court may, in its discre-
tion wait or not for the return of the attachment."

It is the contention: '(1) That the foregoing section
is mandatory, and· gives a right' to the defendants to
have the names of all the jurors called when the case
is called for trial;  (2) if that part of the statute re-
quiring the names of all the jurors to be called is not
mandatory but directory, then a refusal to call the names
of the jurors composing the regular panel will be either
reversible or harmless error, depending upon whether
the defendants show they had or not a fair and im-
partial trial.

The purpose of the foregoing statute is to enable the
defendant to select his trial jury from the members of
the regular panel who are called to serve as jurors at
the term as far as possible; and in order to preserve to
him the benefit of such privilege, the above statute, re-
quiring, when requested, the names of all the regular
panel to be called immediately preceding the calling of
the case for trial, was enacted.   In this instance, the
court denied the request of counsel to call the names of
the 29 men who then composed the regular panel of jur-
ors, but the record shows, and it is not contended to the
contrary, that all of the 29 men composing the regular
panel were present and in attendance upon the court, and
that the first 12 called to the jury were drawn from this
panel, and that the entire 29 were examined upon their

*voir dire* before an open venire was issued for additional jurors.

Had the trial court complied with the request of counsel for defendants and called the names of the entire 29 men composing the regular panel of jurors, the result would have been that all 29 would have answered present. The entire record of impaneling the trial jury is set out in full, and it is disclosed thereby that the entire 29 men composing the regular panel of jurors at that term of court were examined as to their qualifications to sit as jurors in the trial of this case before the defendants were compelled to select trial jurors from any other source, and no contention is made, although an open venire was issued and a part of the jury selected therefrom, that a trial jury was selected composed of men any one of whom was a disqualified juror.

When it is clear that the defendant was not deprived of any substantial right or privilege by the alleged misconduct of the trial court, the judgment of conviction will not be reversed for that reason.

This case has been thoroughly and ably briefed by counsel representing the defendants. Counsel was particularly zealous, both in the trial court and in this court, to preserve every possible question in behalf of his clients. Thoughtful consideration has been given the numerous errors assigned as grounds for reversal, and after an examination of the entire record it is the opinion of this court that these defendants had a fair and impartial trial; that there is evidence in the record which, if believed, amply supports the jury's verdict; that the instructions were fair to the defendants and not misleading; and for the reasons stated the judgments are affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.