## ROBERT ROBERTS v. STATE.

No. A-9541. April 21, 1939.

Rehearing Denied June 30, 1939.

(89 P. 2d 879; 92 P. 2d 612.)

372

Smith & Siler, of Oklahoma City, and Frank Hickman, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, J. Defendant was jointly charged with Morris Symonds and Roy Rankin, with the crime of "directing a riot," in Tulsa county, on July 9, 1937; was granted a severance, tried, convicted, and sentenced to serve a term of five years in the penitentiary, and has appealed.

This is a companion case of Morris Symonds v. State, 66 Okla. Cr. 49, 89 P. 2d 970, this day decided by this court. In the opinion in that case the facts here involved are fully presented. The errors assigned are practically the same and it therefore becomes unnecessary to review them.

The evidence which connected defendant with the riot in Tulsa on the night of July 9, 1937, was as follows:

V. T. Campbell testified that he was a motorcycle officer in the city of Tulsa. That on the night of the riot he saw defendant at Chapman's grocery store while the riot was in progress, but did not see him take any active part therein.

J. L. Burkhead testified that he was employed as a special officer at the Ketchum Hotel. That he saw defendant there at the time of the riot. He testified as follows:

"Q. Tell what happened and what was said, in regard to your gun, please, sir? A. Well, Roberts just asked me to surrender my gun—wanted to take it, and I says, 'No, that gun don't leave my holster, only in case of necessity'. I says, 'It will be all right just like it is', and, I says, 'As far as that gun is concerned, there will be no gun play around here.' Q. You kept the gun? A. Yes, sir. Q. What was the next thing you saw Roberts do? A. He left me and went towards the entrance of the stairway, leading upstairs. Q. The stairway leading upstairs? A. Yes, sir. Q. You don't know whether he went upstairs, or not? A. No, sir, I don't. There were too many people around."

Henry Ketchum testified he was the owner of the Ketchum Hotel.

As to the conduct of defendant, he said:

"Q. What did you see and hear? A. I was on the fourth floor, and on coming down, I heard a lot of voices and it sounded like as a crowd, and I came down the stairs, to investigate, and when I got on the second floor, I should say there was about 50 or 75 men in the hotel. I stood there and watched them coming up until they got up—about 250 men. I knew they were having labor trouble, yet I did not know whether these men were craftsmen—I did not know who they were. I thought, maybe they were there to charivari a bridal couple, and I stood amongst them, and finally Mr. Roberts appeared on the scene, and in the middle of the mezzanine floor, there was a lot of lumber being used— Q. Was that on the mezzanine floor? A. Yes, sir, mezzanine floor—second floor, and this lumber was used by the Long-Bell Lumber Company in putting in our ducts for the air conditioning system. Q. You were installing it, at that time? A. Yes, sir, the Long-Bell Lumber Company was

under contract— Q. All right. A. —and Mr. Roberts, when he came up there, this lumber was covered with canvas, and he throwed the canvas back and gave them some sticks about 1 x 1, and he was passing them out to the crowd. I was about 50 feet away and could not hear what he said, but he began giving these sticks—gave them to the men pointing to the celotex duct, and these men grabbed these sticks and began punching out all these holes, and I then called the police station, and by the time I got through calling them, they had proceeded up to the second, third, fourth, fifth, sixth and seventh floor punching out every piece of duct work in the building."

Roy Hyatt, chief of police of Tulsa, testified he was present when the Jones grocery store was torn up. With reference to defendant, he said:

"Q. Do you know Robert Roberts, the defendant in this case? A. Yes, sir. Q. Did you see him there at Jones' place that night? A. I did. Q. Did you have any conversation with him there that night? A. I did. Q. State to the court and jury what the conversation was, as nearly as you remember it, at this time? A. I talked with Bob with reference to the actions that had gone on—told him and some of the others that were there that they were absolutely not going to tear up this man's property. I said, 'Now, you have done enough damage in Tulsa and we, as officers, are not going to stand for any more of this destruction of property.' At that time, Bob said, 'That is right,' and there were some other boys there, and Bob says, 'Boys, we have put enough heat on Roy tonight,' and, he said, 'Roy, will you take your men and leave, if we leave?' Q. Who said that? A. Bob Roberts. Q. All right. A. And he said, 'all right,' and he said, 'Boys, we will go to Newblock Park and disperse,' and they left, at that time, and I took my boys and came back to town."

On cross-examination, he testified as follows:

"Q. Did Bob say this, or this in substance to you: That if you would get your men to leave, he could, probably, get his men to leave, without any trouble? A. No. He says to me, 'Will you take your men and leave, if I take mine and leave? Q. After he talked to you, he had to go back in the middle of this mob, didn't he? A. Yes, sir. Q. And talk to the men in there? A. Yes, sir. Q. Then, they left,

after that? A. Yes. Q. They didn't leave, until after that time? A. No; they didn't leave until after he had talked to these other men."

Ralph Hyde, a police officer, testified as follows:

"Q. Do you know Bob Roberts, the defendant in this case, when you see him? A. Yes, sir. Q. Did you see him out there at Chapman's store that night? A. I did. Q. Just what was he doing, as far as you know, out there that night? A. When the difficulty first started, they were on the east end of the store, and we got them to quit throwing, and Roberts and another fellow went to the west end of the store and started it all over again. Q. Started what? A. Throwing rocks and bottles through the glass. Q. Was there glass windows there? A. Yes, sir. Q. And they got to throwing rocks and bottles through these windows? A. Yes, sir. Q. Did you see any others there that you know? A. No, sir."

Morris Symonds, a joint defendant, testified he saw defendant at the Ketchum Hotel at the time the riot was in progress.

Defendant, testifying in his own behalf, said: That he had lived in Tulsa since 1912. That he was a moving picture machine operator. That on the night of July 9, 1937, someone, whom he did not know, called him over the phone, asking him to come to a meeting at the courthouse, "that there was a bunch of men that was in a little bit of a bad humor." That he got someone to relieve him about 8:30, and he started to the courthouse, and in passing the Ketchum hotel, he saw a crowd of about 250 men there. That he went inside of the hotel and talked to the state's witness Jim Burkhead. He said:

"Q. Just tell the jury and court the substance of the conversation you had with Jim Burkhead? A. I thought, possibly, he was going to try to force these men out with his gun, in as much as he was an officer, and I advised him to stand there and be quiet and not make any attempt to use a gun in any way, and I would see if I could get the men to leave."

He further testified that he went to the second floor where damage was being done by the men, and tried to get them to quit. He denied handing any of them anything, or directing them, as testified by the state's witness, Ketchum. He testified further that he did not go to the Long Bell Lumber Company, Chapman's store, or the Roxie Theatre, but that he did go to Jones' Grocery, and that he saw Roy Hyatt, chief of police, and had a conversation with him, as follows:

"Q. Tell the jury what you told Roy? A. I told Roy it would be hard for me to get the men away as long as the policemen were there, but if he would take his men and leave, I felt sure I could talk to these men and get them to leave, which they did. Q. Did you know the fellows in that gang? A. No, sir. Q. What did you have to do, after you had the conversation with Roy? A. Just talked to them and explained that 'you boys have done enough damage—let's go on and leave—let's forget the matter and leave,' and they did."

He further testified that he did not personally know any of the persons who were engaged in the riot.

From the above statement of the testimony, it will be seen there is a direct conflict between the evidence of the state and the defendant. As stated in the Symonds Case, this was a question for the jury to pass upon, and they did so and returned a verdict of guilty. Under the law, this court would not be justified in setting aside that verdict on the grounds it was insufficient. The jury did not believe defendant's testimony. If they had they would have acquitted him.

The legal questions raised in defendant's brief are practically the same as raised in the Symonds Case. We have carefully re-examined the authorities cited in defendant's brief, and we do not find any error which would justify a reversal of this case.

As to the judgment and sentence we are of the opinion that the same should be modified as in the Symonds Case,

and it is therefore ordered that the judgment and sentence in this case be modified from a term of five years in the penitentiary, to a term of two years, and as thus modified the judgment of the district court of Tulsa county is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.

On Motion for Rehearing. Motion Overruled.

BAREFOOT, J. Counsel for defendant, at the time of oral argument on rehearing, and in his brief, contends that in the original opinion the specification of errors complained of in this case were not properly considered, and that they were different from the errors presented in the Symonds Case, Symonds v. State, 66 Okla. Cr. 49, 89 P. 2d 970. Every error presented by counsel was considered when the original opinion was written, but for the reason that the court did not consider it advisable to lengthen the opinion of the court by referring to every specification of error raised by counsel we did not specifically refer thereto. However, we have again considered the errors specified.

The first contention that the court erred in failing to sustain a demurrer to the information and to the evidence for the reason that defendant was charged in the information with "directing a riot," and not with simply the charge of "riot" cannot be sustained. The case of Johnson v. State, 16 Okla. Cr. 428, 183 P. 926, cited by counsel, is in no way in conflict with this holding. When properly construed it is in harmony with this decision. From a reading of the statute, which is quoted in the original opinion, it will be noted that in the first section thereof what constitutes a riot is defined. 21 Okla. St. Ann. § 1311. The first part of the section uses the words "any use of force or violence." The second part says "or any threat to use force or violence if accompanied by immediate power of execution." This constitutes a compound offense, as stated in the case of Perkins v. State, 35 Okla. Cr. 279, 250 P. 544, 546, 49 A.L.R. 1129, where the court says:

"Riot at common law, and under provisions of sections 2006 and 2007, Comp. St. 1921, is a compound offense, including some of the essential elements of a criminal conspiracy, involving the execution of an agreement, express or implied, between three or more persons," etc.

The court further says:

"Concerted action need not be shown by specific declarations; frequently, the manner of showing concerted action is by circumstantial evidence."

Further the court says:

"Again, applying the rules of evidence applicable to conspiracy, it is not necessary that an unlawful act be perpetrated in accordance with their prearranged plan; but, if executed unlawfully, pursuant to a criminal conspiracy, the offense is deemed to have been committed by each and all of the coconspirators, unless there is proof tending to show that some one or more of them actively withdrew from the conspiracy. Under the circumstances shown, the several members of this mob stood by and acquiesced in this flogging, and it cannot be said that the offense was committed by the two persons who did the actual beating, independent of the others."

There was no proof of an actual conspiracy in the Perkins Case, only as circumstances may have been considered, as in the instant case.

Judge Furman, in the case of Crawford v. Ferguson, 5 Okla. Cr. 377, 115 P. 278, 279, 45 L.R.A., (N.S.), 519, after quoting the riot statute, says:

"It matters not how good their intentions may be, if three or more persons, without authority of law, combine together, and by threats to use force or violence if accompanied by immediate power of execution, seek to accomplish any unlawful purpose, they are guilty under the law of riot, and liable to be imprisoned in the state penitentiary for any period not less than three years." Cochran v. State, 4 Okla. Cr. 379, 111 P. 974.

The statute under consideration, and under which the information was filed in this case, was taken by this state

from Dakota. In the case of State v. Page, 15 S. D. 613, 91 N. W. 313, 314, the Supreme Court of that state had under consideration this identical statute. The defendant was charged with the crime of riot (a) by carrying at the time of the assault "a dangerous weapon, to wit, a strong and heavy whip, some 6 feet in length." The court held that a whip was not a "deadly or dangerous weapon," but the court, after quoting the statute defining riot, Comp. Laws Dak. 1887, § 6677, and subdivision 3 of the next section, says: "The information in this case was drawn under this subdivision of the section," and says further: "as will be noticed, the statute is a highly penal one. When the party is found guilty of carrying a deadly or dangerous weapon, or is disguised, at the time of the commission of the offense, he is punishable for a felony." Also: "One convicted of an ordinary riot, in which no other crime was committed, and in which the party engaged carried no deadly or dangerous weapon, and was not disguised, is declared to be guilty of a misdemeanor."

It will thus be seen that the South Dakota Supreme Court, in construing this identical statute which was taken from that state, draws the same distinction as to the different sections of the statute, as did the trial court in the instant case. In that case defendant was charged with committing a riot, and at the time of carrying "a dangerous weapon, to wit, a strong and heavy whip, some six feet in length." Under the statute the question of misdemeanor was not involved, and was not submitted to the jury. Only the charge in the information should be considered, as in the instant case the charge that defendant "directed, advised, encouraged, or solicited other persons, who participated in the riot, to acts of force or violence." This is the only charge to which defendant could have been held accountable under the allegations of the information in this case.

It is true that under the law of this state a person shall be charged with only one offense, and can be convicted only

of the charge alleged against him, but our statute also provides, Oklahoma Statutes, 1931, sec. 3097, O. S. A., title 22, sec. 916, that:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged."

Our statute defines robbery as the wrongful taking of personal property, etc. 21 Okla. St. Ann. § 791, St. 1931, § 2542. Another section of the statute defines what constitutes conjoint robbery, 21 Okla. St. Ann. § 800, St. 1931, § 2552, but this court has held that those statutes are statutes of classification, not definition, and that the robbery defined therein is that defined by the general definition. The mere fact that the charge was "conjoint" robbery would not change the offense from that of robbery, as defined by the statute. Simpson v. State, 40 Okla. Cr. 58, 266 P. 783; Wissinger v. State, 39 Okla. Cr. 324, 264 P. 631; Fisher v. State, 54 Okla. Cr. 109, 16 P. 2d 267.

The defendant in this case could have in no way been prejudiced or suffered the loss of any substantial right, by reason of the charge of "directing a riot." It limited the charge against him as to that specific provision of the riot statute. Kelly v. State, 12 Okla. Cr. 208, 153 P. 1094; Cochran v. State, 4 Okla. Cr. 379, 111 P. 974; Smith v. State, 7 Okla. Cr. 4, 120 P. 1031.

The proposition of defendant in his brief on rehearing that "What we contend for is this: Even though a defendant directed or advised others to acts of violence he cannot be guilty of riot unless he himself participates in the riot itself," is answered by the testimony in this case, as quoted in the original opinion, which shows that defendant not only directed, advised, and encouraged the same, but actually participated therein, by the throwing of rocks through the windows and handing instruments to others to be used in the destruction of property.

Counsel, in his brief, says:

"In concluding our argument on this first proposition we respectfully ask the court, should it decide this contention against us, to point out what words are found in the information to the effect that this defendant or any of the defendants named in the information participated in the riot."

The answer to this is the information itself, which provides:

"* * * did unlawfully, willfully, riotously and feloniously, while acting in concert each with the other, solicited, directed, advised and encouraged a great number of other persons, consisting of more than three, whose names to the county attorney are unknown, in riotous acts and use of force and violence and threats to use force and violence, accompanied by immediate power of execution, and in concert of action, and confederated together with a common purpose and intent and without authority of law, going upon the streets of the city of Tulsa. * * *"

This allegation, coupled with the evidence that defendant not only directed, advised and encouraged, but actually participated therein, is a complete answer to the question propounded. To contend that the above allegation does not charge the participation in the riot is to place a technical construction thereon, which is forbidden by the law of this state.

It is next contended that the court erred in giving instruction No. 4, which was as follows:

"You are instructed that any use of force or violence, or any threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot."

"You are further instructed that any person who directed, advised, encouraged or solicited other persons who participated in the riot, to acts of force or violence, is punishable by imprisonment in the penitentiary for not exceeding 20 and not less than 2 years."

It is contended that this instruction did not inform the jury that it was necessary for the defendant to participate

in the riot before he could be convicted. This contention wholly ignores the first paragraph of this instruction. Under the first section, 21 Okla. St. Ann. § 1311, if the jury found under the evidence, as they had a right to find, that defendant used "force or violence," or made any threat to use the same, with immediate power of execution, he would be guilty of committing a "riot." The second section, 21 Okla. St. Ann. § 1312, provided that if he "directed, advised, encouraged or solicited other persons," etc., he would be punishable as subdivision 4 provided. Certainly there was no error in this instruction. This instruction, under the law, must be construed in the light of all the instructions, and especially with reference to instruction No. 10, which was as follows:

"You are instructed that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or only aid and abet in its commission, whether present or not, are principals and equally guilty."

And also instruction No. 7, which was as follows:

"You are instructed that if you find from the evidence, beyond a reasonable doubt, that the defendant threatened with force or violence any of the parties mentioned in this information, that fact in itself would not warrant a conviction on this charge, unless you further find beyond a reasonable doubt that the defendant directed, advised, encouraged or solicited other persons who participated in the riot to acts of force or violence."

And also instruction No. 8, which was as follows:

"You are instructed that if you find from the evidence that the defendant was at the Ketchum Hotel, or at any other place, you cannot convict him unless you find beyond a reasonable doubt that he directed, advised, encouraged or solicited other persons who participated in the riot to acts of force or violence; and you are instructed that if you have a reasonable doubt thereof, it will be your duty to resolve that doubt in favor of the defendant and acquit him."

All of these instructions as a whole clearly protected the rights of the defendant as shown by the evidence in this case. They emphatically told the jury unless he committed the acts as defined by subdivision 4, of the statutes, and, as charged in the information, he would not be guilty. Under our statute, one who aids or abets another in the commission of a crime is guilty as a principal. Oklahoma Statutes, 1931, section 1808, O.S.A., title 21, sec. 172, is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

Defendant next complains of the court's instruction No. 5, which was a charge on circumstantial evidence. We fail to see how this charge could have have prejudiced the rights of defendant. It would be more in his favor than against him. There was both direct and circumstantial evidence in this case.

In instruction No. 6, the court instructed the jury upon the question of "alibi." Counsel claims that defendant did not present this defense. We fail to see how this charge could have prejudiced the rights of defendant. It may not have been necessary to give it, but it certainly was not prejudicial in any way to his substantial rights. The same principle is true as to instructions Nos. 7 and 8, to which defendant objected. If the evidence in this case had not shown that a "riot" was committed, and that defendant not only participated therein, but that he aided, advised and encouraged those who did participate therein, the contention of defendant would not be without merit, but the evidence showed these things. As stated in the original opinion in the Symonds Case:

"Judged by the rules above quoted, and applying the facts to the instant case, it cannot be denied that under the law a riot was carried on in the city of Tulsa on the night of July 9, 1937. Men who had the right to join any organi-

zation, which they believed would assist them in bringing about a better living condition for themselves and their families; one that would bring them shorter hours and better wages; one that under the law gave them the right of collective bargaining; the right to strike; the right to picket; and the right to use every lawful and legitimate means to secure these rights from their employer; that gave them every right guaranteed by the principles and policies of the American Federation of Labor, should exercise these rights in a lawful manner, and not resort to 'riot,' and unlawfully destroy the property of others by taking the law into their own hands. Our sympathy is with the man who labors, and who takes a step by the joining of an organization which assists him in the securing of better living conditions, a living wage, and shorter hours of employment, to the end that he may spend more time with his family, but under the law these rights should be secured in a lawful manner, and should not be by resort of taking the law into one's own hands, and willful destruction of property, as the evidence here discloses."

Finding no error, it is the opinion of the court that the motion for rehearing should be overruled, and it is so ordered.

DOYLE, P. J., and DAVENPORT, J., concur.