Norma Jean Spagner GIST, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16982.

Court of Criminal Appeals of Oklahoma.

April 9, 1973.

Rehearing Denied April 30, 1973.

Donald W. Davis, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Daniel J. Gamino, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Norma Jean Spagner Gist, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of McCurtain County, Case No. CRF–70–210, for the offense of Shooting With Intent to Kill. Her punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Winfred Canant testified that on December 11, 1970 he was employed as elementary principal of two schools in the Idabel public school system. At about 4:45 p. m., he was alone in the school building. About two hours earlier, he had paddled the defendant's son Sol for his conduct in school. The defendant walked inside to where he was standing and said, "Well you did it" and he replied, "Yes, I did, he forced me to. He put a tack in a boy's seat and he knew the boy was going to sit on it and knew the boy was going to hurt himself and knew he would get a spanking, and I gave him a couple of licks." (Tr. 43) She walked to the front door and called her son's name. He said, "Before he gets in here tell me what he told you when he got home." The defendant stated to him that "she wasn't there to do any talking and all she wanted me to do was to hit her." He replied that he had no reason to hit her. She swung at him with her purse and he ran out of the building. He ran about fifteen to twenty feet down the sidewalk with the defendant following him. He looked back and saw the defendant pull a gun out of her purse. A bullet hit the ground and he said, "Norma Jean." She shot him in the arm and it knocked him about five feet back from her to the ground. The defendant was about six or seven feet from him when the shot was fired. He shouted for help and when no one came to his aid, he rose, walked twenty-five feet to his car, and drove himself to the hospital. On cross-examination, he testified that on two occasions she had asked him not to paddle her child but did not state why she didn't want him to.

James Hedrick, Jr. testified that on December 11, 1970 he was employed as a VISTA volunteer working in Idabel. That afternoon he gave the defendant a ride home between 4 and 4:10 p. m. Upon arriving at her home, she asked him to take her to Central Elementary School so she could speak with the principal. They proceeded to the school where he and Sol remained in the car while defendant went inside the building. He next observed Canant emerge from the building followed by the defendant. Canant proceeded toward his car with the defendant still following. The defendant produced a gun fired one shot at the ground. Canant grabbed for the defendant or the gun and the defendant fired a second shot. Canant grabbed his left arm and fell to the ground. Canant called for help and subsequently got up, got into his car and drove away. The defendant returned to Hedrick's car and asked him to take her to the Sheriff's Department.

Deputy Sheriff Cooper testified that he was in the Sheriff's office around 5:00 p. m. on December 11. The defendant came in and said, "My name is Norma Jean Gist and I just shot Winfred Canant and I want to turn myself in." (Tr. 125) A .32-caliber revolver with two empty shells in it was found in the defendant's purse.

The defendant called several character witnesses who testified that she had a good reputation in the community as a law-abiding, peace loving citizen and that they were aware of Sol's physical condition.

The defendant testified that her son Sol was born with a birth defect, hypo-spadia, and as a result of his condition, "His urine passage is directly to the outside of his body and any abrupt jar or anything messes up his urine strain. He has to sit down

to urinate until the last stage of this surgery." (Tr. 169) She testified that Sol had undergone surgery and check ups at Children's Memorial Hospital in Oklahoma City. She spoke with each of Sol's teachers about his condition and had a conversation with Mrs. Boling and Mr. Canant the prior afternoon. On December 11, she received a call from her mother because Sol had been paddled at school. She proceeded home and had a conversation with Sol. She went to Central Elementary School and observed Canant talking on the telephone. She stated, "Well, you did it" and he said, "Yes, I did." (Tr. 174) Canant stated to her that he wanted to know what Sol had told her and he started out the door. She told Canant to leave Sol alone and followed behind him. She told him, "I told you never to paddle my son." (Tr. 175) Canant turned around and observed her with a gun. He said, "No, let's talk about it." She said, "I told you never paddle my son, he can't stand it." Canant said, "I'll paddle you" and started toward her. She fired two shots. She then asked Mr. Hedrick to take her to the Sheriff's office where she informed Deputy Cooper that she had shot Mr. Canant.

◾ The first proposition asserts that the trial court's rulings and comments prejudiced the defendant's case. We have carefully reviewed the record and are of the opinion that this proposition is without merit. We specifically observe that the trial court did not err in sustaining objections to defendant's questions on cross-examination concerning Canant's prior general relations with black people. We have previously held that a witness cannot be impeached on collateral or immaterial matters. White v. State, Okl.Cr., 458 P.2d 322. We next observe that the trial court did not take sides on ruling on motions at trial. The record clearly reflects that the trial court's rulings were proper. We further observe that the trial court did not err by participating in the questioning of some witnesses in attempting to clarify a fact in issue for the jury's benefit. The trial court did not in any manner indicate his views of matters at issue. In Garner v. State, Okl.Cr., 500 P.2d 865, we stated:

"* * * A trial judge has the right to ask of any witness such questions as will tend to elicit the truth so long as the judge does not by his questions and conduct indicate his views of matters at issue. * * *"

The second proposition contends that the court erred in overruling defendant's motion to suppress evidence of the gun. Defendant argues that the gun was seized from her purse before her formal arrest. We are of the opinion that the evidence does not support defendant's contention. At the suppression hearing, the defendant testified that "they never took my purse until they got ready to put me into the cell and they said they had to lock it up and they just took it and put it in the safe." (Tr. 10) It is thus readily apparent that the purse was not seized until after the defendant's arrest.

◾ The third proposition asserts that the trial court erred in refusing to give defendant's requested instruction of self-defense. We need only observe that the trial court refused defendant's requested instruction because the same instruction was given in different form. The record reflects that the court gave six instructions dealing with the issue of self-defense, thereby rendering defendant's requested instruction unnecessary. In the early case of Martin v. State, 5 Okl.Cr. 355, 114 P. 1112 (1911), the Court stated:

"* * * The instructions requested and refused relate to the law of self-defense. No useful purpose could be served by a repetition of the same thing in different language, and it was clearly not error for the court to refuse requested instructions which were substantially similar to those given. * * *"

◾ The fourth proposition contends that the trial court erred in overruling defendant's objection to the exhibition of Witness Canant's scar to the jury. The

defendant argues that the exhibition had no probative value and was done solely to arouse the passion of the jury. The record reflects that the trial court in overruling defendant's objection stated: "I think they have a right to know where he was shot in a charge of this nature." (Tr. 48) We concur with the trial court's finding that the location of the wound had probative value in a prosecution for the offense of Shooting With Intent to Kill. We further observe that the exhibition was not the kind of gruesome and ghastly demonstration this Court has previously condemned.

■ The fifth proposition asserts that the trial court erred in failing to give defendant's requested instructions on Carrying a Concealed Weapon and Assault and Battery. We are of the opinion that the trial court properly refused the instructions. The record reflects that the trial court offered to give an instruction on the lesser included offense of Assault With a Dangerous Weapon With Intent to do Bodily Harm and the defendant specifically requested that such an instruction not be given to the jury. In Jones v. State, 12 Okl.Cr. 255, 154 P. 689 (1916) the Court stated:

"* * * Where there is evidence that might tend to lessen the offense, or to reduce the crime to a degree lower than that charged in the * * * information, it is the duty of the trial court at all times to fully instruct the jury as to the law upon such lower degrees, or included offense. But where there is no evidence to support such lower degree, or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider such questions. * * *"

■ The final proposition contends that the trial court erred in refusing to grant defendant's motion for continuance to give them an opportunity to obtain necessary medical records. The record reflects that on the day of trial, the defendant made an oral motion for continuance to obtain the medical records. The testimony in support of defendant's motion for continuance adduced that her attorney was aware of the existence of the medical records ten days prior to trial. The defendant made a telephone call to University Hospital in an attempt to obtain the records and was advised that it would "take more time." The record does not reflect that the defendant made any effort to subpoena the records. In Johnson v. State, Okl.Cr., 386 P.2d 336, in dealing with a similar proposition, we stated:

"That counsel in the case at bar did not exert due diligence in procuring the records of the hospital before the cause went to trial, can not now be urged by the defendant as grounds for reversal * * *."

We are of the opinion that the defendant has totally failed to show due diligence in attempting to obtain the records. The judgment and sentence is, accordingly, affirmed.

BRETT, Judge (concurs in part and dissents in part).

I concur that defendant in this case committed an aggravated assault and battery under the provisions of 21 O.S.1971, § 645, but the prosecuting witness' own testimony shows that defendant did not have the intent to kill as alleged in the information. On direct examination the prosecuting witness testified concerning what the defendant did as follows: "She stayed in the same spot and when I hit the ground I was looking right at her and she had the gun still in her hand aiming it at me." The witness related that he got up and started to his car and then said, "She stayed in her tracks until I turned my ignition key on and she started towards the car that she drove up in."

If defendant had had the intent to kill the witness, she would have shot him while he was on the ground. There is no doubt whatsoever but that the defendant did shoot and injure the witness, but the prosecution should have been laid under 21 O.S. 1971, § 645, for aggravated assault and

battery. Therefore, I believe that justice requires that this sentence should be modified from 10 years confinement in the State Penitentiary, to one of 1 year for the aggravated assault and battery.