Eual HARDT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16622.

Court of Criminal Appeals of Oklahoma.

Oct. 21, 1971.

Bill Settle, Muskogee, for plaintiff in error.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Eual Hardt, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Muskogee County, Oklahoma for the offense of Murder. His punishment was fixed at life imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Kenneth Mincher testified that at approximately 1:00 a. m. on April 24, 1970, he was at the American Bar in Muskogee. He testified that there was a small disturbance in the middle of the club, and the defendant pulled out a gun and hollered, "You son-of-a-bitches better quiten down or I'll kill you uns all." Mincher and R. L. Keith attempted to disarm the defendant. Keith grabbed him and bent him back over an ice machine, wherein Mincher removed a gun from the defendant's pocket. Mincher told Keith that he could let him go, because he had the gun. The defendant at that time hollered, "You son-of-a-bitches, you didn't get my gun. You just thought you did." He fired two shots at Keith and as Keith was falling, he fired a third shot through Keith's head. The defendant ran from the bar and Mincher took pursuit but was unable to catch him. He testified that in his opinion, the defendant was not drunk.

Nathaniel Clymer testified that he was at the American Bar on the night in question with R. L. Keith and Keith's wife. They were preparing to leave the premises to go eat, when the defendant fired three times into the ceiling. He went with Keith

and Mincher to take the gun away from the defendant. After Mincher took the gun, Clymer started walking away, wherein the defendant said, "You blankety-blanks didn't get my gun." The defendant then fired at Keith, the third shot striking him in the temple. Keith's wife attempted to run to where Keith had fallen, and the defendant said, "Get her away from him, or I'll kill her, too." (Tr. 149) The defendant ran from the bar, and Mincher ran after him. He further testified that the defendant looked a little disturbed, but he didn't look drunk.

Mrs. R. L. Keith, wife of the deceased, testified that she was with her husband at the American Bar. She testified that she was in a back booth and heard three shots. She heard two further shots and observed her husband lying on the floor. She testified on cross examination that to her knowledge, the defendant and her husband were friends.

Jo Anna Neel testified that she was the co-owner of the American Bar. The defendant has worked at the bar for approximately two months in the capacity of a doorman. On the evening in question, she heard three shots and observed Mincher and Keith trying to take a gun away from the defendant. After removing the gun, Keith started to walk away, wherein the defendant stated, "You thought you had my gun, but you didn't," and he shot him. (Tr. 169) She testified that the defendant shot, then shot again, and then aimed and shot Keith through the head. She testified that she heard the defendant state toward the deceased's wife, "Keep her away from him, or I'll shoot her, too." (Tr. 171) She testified that on cross examination that the defendant did not appear to be drunk but looked like a "mad dog."

Detective Butcher testified that he investigated the scene of the homicide and identified State's Exhibit One as a blank .22 caliber pistol.

Officer Cameron testified that he was the first officer on the scene and observed Keith lying on the floor of the premises.

At approximately 4:30 a. m., he received a call from Attorney Otis Eversole and went with the said attorney to 502 South 2nd Street and took the defendant into custody. He testified that he searched the defendant at that time for a weapon, but he had none on his person. He took the defendant to the jail in his car and gave the defendant a cigarette, wherein the defendant asked "if the son-of-a-bitch was dead." (Tr. 189) He testified that in his opinion, the defendant appeared to be rational at the time of the arrest, but was a little scared, and mainly interested in what was going on in his behalf.

John Thornton, Investigator for the District Attorney's office, testified that he and Charles Bradley went to the address where the defendant was arrested at approximately noon on the day in question. They talked to the defendant's sister and inquired if the defendant had left a gun there. He identified State's Exhibit Two as the weapon that was given him by the defendant's sister.

Harvey Randall, M.D., testified that he performed an autopsy on the deceased on April 27, 1970. In his opinion, the immediate cause of death was a gun shot wound into the brain. The defendant stipulated to certain medical reports of Dr. R. F. Tinney, who treated the deceased in Tulsa prior to his demise.

The defendant testified that he resided at 510 South Second Street in Muskogee with his sister and mother. He testified that on the day in question, he started drinking early in the afternoon. During the course of the afternoon and evening, the defendant consumed both beer and whiskey and two types of pills, "milltowns" and "speed." He testified that the combination of the drinks and the pills "wiped him out." He testified that he ended up at the American Bar with certain friends. He testified that an argument began, and because of his past experience at the club as a bouncer, he pulled out his blank gun and fired two or three times into the ceiling. He put the gun back into his pocket,

and someone hit him. He recalled someone saying to get his gun, and that his pocket was torn on the left side. The next thing that he remembered was somebody saying, "Don't you realize what you've done. And she pointed with her left hand, pointed downward and I turned and looked and I seen R. L. laying on the floor and I looked back at her and apparently, she was crying." He testified that he left the club in a still fuzzy condition, and apparently wandered aimlessly for some time. He returned to his apartment, hid the gun in a box of instant milk, and called his attorney. He denied that he wished "the son-of-a-bitch was dead." He testified that he had known Keith for some fifteen years, and that they were very good friends.

Justine Hardt, the sister of the defendant, testified that Thornton and Bradley came to their apartment at approximately 11:00 a. m. on April 24, 1970. She testified that she was asked if she had a gun, wherein she retrieved her gun and turned it over to Thornton. She testified that Thornton told her that he didn't like to serve search warrants to allow them to go through all her personal belongings. She testified on cross examination that the defendant returned home at approximately 2:00 a. m., told her he had shot a man, changed clothes, drank a glass of milk and ate a piece of cake, and then called his attorney. She identified State's Exhibit Two as the gun the defendant had brought home and told her that he wanted to hide it. She further testified that she found certain pills in the defendant's personal effects.

■ The first proposition asserts that the trial court erred in overruling defendant's demurrer to the State's evidence. We have only to observe that the defendant does not cite authority to support this proposition. We have repeatedly held that it is necessary for counsel of plaintiff in error not only to assert error, but also to support its contentions by both argument and by citation of authority. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court erred. Sandefur v. State, 461 P.2d 954. Although this proposition is improperly before this Court, we are of the opinion that from the foregoing statement of facts that the trial court properly overruled defendant's demurrer to the evidence.

■ The next proposition contends that the trial court erred in overruling defendant's motion to suppress in relation to State's Exhibit Two. The trial court conducted an Evidentiary Hearing outside the presence of the jury on defendant's motion to suppress and after hearing the testimony of Investigator Thornton and Miss Hardt, overruled defendant's motion. Thornton testified that he and Officer Bradley went to the defendant's sister's apartment and inquired if the defendant had left a gun there. She invited the officers into the apartment and subsequently went to a cabinet and got the gun out of a sack of flour, and handed it to Thornton. Thornton testified that there was no mention or discussion about a search warrant. Justine Hardt testified that the officers came to her apartment and inquired about a gun. She answered that, "Yes, she had the gun there," wherein Thornton said, "I don't want to serve a search warrant to have to go through my personal belongings," and he said, "It would be best—to turn it over." (Tr. 107) She further testified that she voluntarily got the gun and turned it over to Thornton. Thornton was recalled and testified that although he had knowledge that the defendant was arrested at the apartment, he did not know the defendant resided at the apartment. In Dawson v. State, 83 Okl.Cr. 263, 175 P.2d 368, we stated:

"It is the well settled rule that the finding of a trial court at a hearing on a motion to suppress the evidence will be sustained where there is disputed testimony as to the facts of the case, and

there is sufficient evidence in the record to sustain the court's finding."

We are of the opinion that the evidence presented to the trial court was sufficient to sustain the Court's findings. We are of the opinion that the evidence does not reflect that the officers conducted the search, and further by the defendant's own witness that the gun was turned over to the officers voluntarily. (Tr. 114) We further note that at the time State's Exhibit Two was offered as evidence that the defendant failed to object to its introduction. On page 199 of the Transcript, the defendant's attorney stated:

"I have no objection to 1 and 2 but I'll reserve an objection to 3 and 4 until later."

On page 208 of the Transcript, the defendant's counsel stated:

"If the Court pleases, insofar as State's Exhibit No. 1 is concerned, which is the weapon I think that was testified to and alleged to be the one which was fired into the ceiling, we have no objections to that one and insofar as State's Exhibit No. 2 is concerned, the .22 caliber pistol alleged to be the pistol used by the defendant, we have no objection to that one.

"THE COURT: All right. State's Exhibits No. 1 and No. 2 will be entered in evidence without objection."

It would be inconsistent to the orderly administration of justice to permit a defendant to allow an exhibit to be admitted without objection at the trial court, and then on appeal to raise the proposition that the trial court erred in overruling the motion to suppress the exhibit. We, therefore, find this proposition to be without merit.

■ The next proposition asserts that the trial court erred in overruling defendant's motion for the appointment of an investigator and an independent psychiatrist, all at the expense of the State. The de-

fendant argues that such rights are guaranteed by the Constitution of the United States of America and the Constitution of the State of Oklahoma and cites Christian v. United States, 398 F.2d 517 (10th Cir., 1968). We are of the opinion that there is a clear distinction between the *Christian* case and the case at bar. The Federal Statutes authorize trial courts to appoint an investigator where such services are necessary, wherein under the statutes of the State of Oklahoma, there is no provision for such appointments. Until our Legislature sees fit to enact legislation providing for such appointments, the trial courts are without authority to comply with such requests.

■ The next proposition asserts that the evidence adduced at the trial was insufficient, and did not support the verdict of the jury. We have consistently held that where there is competent evidence in the Record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

The final proposition contends that the trial court erred in giving of the instructions to the jury. Although this proposition is improperly before this Court, in that the defendant did not cite authority to support the proposition, we have carefully reviewed the instructions and are of the opinion that they are sufficient to cover the subject matter of the inquiry. We, therefore, find this proposition to be without merit.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal, and under said circumstances, we are of the opinion that the judgment and sentence should be, and the same is, affirmed.

BRETT, J., concurs.

NIX, Judge (specially concurring).

Lest there be any misunderstanding, it should be pointed out that defendant did have standing to challenge the lawfulness of the search and seizure of the rifle. The applicable rule of law is set forth in Lindsey v. State, Okl.Cr., 488 P.2d 935 (1971). The question of standing and consent herein closely parallel Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). However, defendant's failure to raise any objection until appeal constitutes a waiver.