Robert Lee ASBERRY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–40.

Court of Criminal Appeals of Oklahoma.

· May 17, 1977.

Clark L. Randall, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, Robert Lee Asberry, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Tulsa County, Case No. CRF–76–134, of the crime of Murder in the Second Degree. Punishment was assessed at a term of ten (10) years to life under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Tomas Johnson testified

that in the early morning hours of December 13, 1975, he slept in his car parked in a driveway next to the home of the deceased. Between 5:00 and 6:00 a. m. he observed the defendant parked in a black pickup truck in front of the decedent's home. The defendant went into the house and stayed approximately five minutes and then returned to the pickup, getting in the passenger side. The witness further related that it seemed as if the defendant "crossed over something" as he slid to the driver's side. Once the defendant was under the steering wheel it appeared as if he was wrestling with something on the passenger side of the seat. He then heard a woman's voice from the truck yell obscenities. Johnson at the time thought the voice was that of the defendant's wife. However, the witness stated that the voice of the defendant's wife and the voice of the decedent sounded alike since they were sisters. The truck then drove off.

Harm Franklin then testified that on December 12, 1975, he went to the home of the decedent, Brenda Nelson, in Tulsa to visit her and their children. He stayed until 6:30 p. m. Around noon on the 13th he returned to the home to find the decedent missing. He went into the bedroom and noticed that the bed was torn up and that the drawers were dumped on the floor. He then identified Exhibit No. 2 as a .22 caliber revolver which he had given to the decedent and further stated that he remembered seeing the decedent with approximately $150.00 the evening before which she stated she was going to use for Christmas shopping. He then identified Exhibits 3 through 10 as certain personal items as having belonged to the victim.

Arneta Parrish testified that on the 12th at approximately 11:30 p. m. she had occasion to call the decedent who told her that she had no plans to go out that evening. She further testified that in all the time she had been acquainted with the decedent she had never known her to leave her children unattended or the house unlocked at night.

Officer Ray Nelson of the Tulsa Police Department then testified that he was the decedent's brother and that he took part in the search for his sister and the investigation of the incident. He further testified that he had occasion to talk to the defendant on December 14, 1975, and that the defendant told him that he had gone to Haskell and Sapulpa on the night in question and gotten drunk. Defendant further stated that later the next morning the wheel of his truck had come off on the Broken Arrow Expressway and that he had fallen asleep in the truck. Officer Nelson further stated that he had another conversation with the defendant the following day when the defendant told him that he had actually been with another woman in Haskell on the night in question and that he did not tell Nelson about it before because his wife was present. On the 15th of December, the defendant called the officer and asked him if his story had been "checked out yet."

Officer Bill McCracken then testified that on January 17, 1976, he went to Haskell to assist in a homicide investigation. Upon arriving at the scene he observed a partially burned purse and the skeletal remains of a body approximately 30 feet from where the purse was found. Also found were a nightgown and burned particles of material. McCracken then identified Exhibit 50 as a photograph of the skeletal remains of the victim. The exhibit was admitted into evidence over objection of the defendant. He further described the head of the victim as having a small wound in the forehead and stated that it took from 30 to 45 minutes to drive from Tulsa to Haskell in Okmulgee County. (Note, Haskell is in Muskogee County, but the remains were found in Okmulgee County, west of Haskell).

Officer Charles Sasser then testified that on December 17, 1975, he was assigned to the Brenda Nelson missing person case and went to the defendant's place of employment, the Bryant Refractory Company, to speak to the defendant. The defendant was at lunch when the officer arrived and he observed the defendant return in a 1976 black Chevrolet pickup. He identified Ex-

hibits 11 and 12 as photographs of the defendant's truck. The defendant subsequently told the officer that on the night of the 12th he had gone to Haskell and made a payment on his truck. He then went to see a girlfriend. The officer further related that each time he asked the defendant a question his reply would be, "What did my witnesses say?" The defendant further stated that he left his girlfriend's house before dawn and started towards Bixby when a tire came off his truck. He spent the rest of the night in his truck and then called a wrecker. Officer Sasser then identified several articles of personal property belonging to the victim which had been found in the area where the body was found. He further identified Exhibit 51 as a lead slug received from the Medical Examiner's Office.

James Stephens then testified that he was employed as a wrecker driver and that about 9:00 a. m. on the 13th he responded to a call on the Broken Arrow Expressway and towed in a black Chevrolet pickup which he testified was similar to the pickup in Exhibits 11 and 12.

Mike Schwartzlander then testified that he worked at Bryant Refractory and that he knew the defendant. He further stated that during the month of March, 1976, he found a gun under a shed in the yard of the refractory. He testified that Exhibit 2 looked like the gun he found. He further stated that the gun was taken to his employer, Mr. Bryant, and that all employees had access to the area where the gun was found. Frank C. Bryant then related that the defendant worked for his company and that on March 23, 1976 a firearm was brought to his office. He identified Exhibit 2 as the gun and stated that he gave it to the Creek County Sheriff's Office. Officer D. A. Roberts then testified that on the 23rd he picked up a .22 caliber revolver from the Creek County Sheriff's Office and identified same to be Exhibit 2.

George Wood of the First Bank of Haskell then identified a loan agreement securing a 1976 pickup purchased by the defendant and stated that the defendant made an installment payment on December 13, 1975, two days before it was due.

Officer Tom Lewallen was then qualified as a ballistics expert and testified that he performed certain tests on Exhibit 51 and that in his opinion the projectile could not have been fired from anything other than a .22 caliber weapon.

The parties then stipulated that Dr. Lee Beamer, a specialist in forensic pathology, would testify that he examined the remains of the decedent and that the projectile which he removed from the skull was fired from a small caliber weapon but that he could not determine if it was .32, .25, or .22 caliber. In his opinion the wound would have been sufficient to cause death. Due to the decomposition of the body he was unable to fix the date of death. The projectile that he recovered from the victim's skull was given to Officer Charles Sasser.

The state then rested. The defendant then demurred to the evidence and again objected to proof of venue. He then rested after offering no evidence in his own behalf.

The defendant's first assignment of error contends that the trial court erred in not dismissing the action due to the lack of venue in Tulsa County. To support his contention the defendant admits that venue may be proven by circumstantial evidence but argues that in the instant case there was no proof whatsoever that the injury causing death occurred in Tulsa County and that the finding of the body in Okmulgee County would warrant a finding that the murder was committed in that county under the general rule cited in 22 C.J.S. Criminal Law § 185(17). The defendant also cites *Loyd v. State*, 6 Okl.Cr. 76, 116 P. 959 (1911), wherein this Court stated:

"The crime if any, was committed and complete when the fatal blow was struck in Jefferson County and the fact that the deceased died in Canadian County was immaterial. The death of the decedent from this blow merely determined the character of the crime committed and only referred back to and qualified the homicidal act."

The defendant therefore argues that since there is no proof that the fatal shot was fired in Tulsa County, proper venue was of necessity in Okmulgee County where the body was found. We disagree.

In 1961 Article II, § 20 of the Oklahoma Constitution was amended to read in pertinent part as follows, to-wit:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed or, where uncertainty exists as to the county in which the crime was committed, the accused may be tried in any county in which the evidence indicates the crime might have been committed . . ."

■ In the instant case it is apparent from the evidence presented that the homicidal act might have been committed in either Tulsa County or Okmulgee County. Therefore, the action was properly brought in either county. The defendant's first assignment is without merit.

The defendant's next assignment of error urges that the trial court committed reversible error in admitting a gruesome photograph of the homicide into evidence over the objection of the defendant. The defendant specifically complains of Exhibit 50 which is a photograph of the skeletal remains of the decedent. Defendant argues that the trial court abused its discretion in admitting the exhibit into evidence for the reason that the danger of prejudice arising out of the introduction of the gruesome photograph outweighs any probative value gained by its admission and was introduced by the state primarily to arouse the passion of the jury. Again we disagree.

■ As stated in the defendant's brief the test for admission of gruesome photographs is whether the probative value of the photograph outweighs the danger of prejudice to the defendant. *Pate v. State,* Okl.Cr., 361 P.2d 1086 (1961). The question of admissibility of photographs is a matter addressed to the sound discretion of the trial court. *Jones v. State,* Okl.Cr., 542 P.2d 1316 (1975).

■ In the instant case the photograph complained of was not so gruesome as to make the trial court's decision an abuse of discretion. The photograph was black and white and revealed a skeleton. The photograph is relevant and material to a determination of an approximate time of death and tended to corroborate the testimony of witnesses. We cannot say that the trial court abused its discretion and the defendant's second assignment is without merit.

The defendant's last assignment of error contends that the defendant was denied a fair and impartial trial by reason of prejudicial remarks made by the prosecutor. The specific comment complained of is as follows:

". . . While we are on this matter, have you seen Vivian Asberry here in the courtroom at any time, the wife of the defendant? Did Robert Asberry call her to the stand and say—

"MR. CORLEY: I object to this and ask the jury be admonished that he was supposed to call her to the stand anyway. The testimony was she wasn't there. He didn't know anything about it. We never alleged she was there. Why are we supposed to call her when she wasn't there?

"BY THE COURT: I'll overrule the objection.

"MR. MALLOY: Robert Asberry call his wife, Vivian, to the stand and tell you, yes, that was me in the pickup truck. Did that happen?

"MR. CORLEY: Your Honor, we ask the jury be admonished. We never said she was. We said the pickup wasn't there.

"BY THE COURT: I'll overrule the objection.

"MR. MALLOY: Reasonable inference to draw from that particular fact ladies and gentlemen. If she was in that pickup truck you sure didn't hear about it; did you? . . ."

In support of his contention the defendant cites *Robinson v. State,* Okl.Cr., 489 P.2d 1358 (1974), wherein the prosecuting attorney in his closing argument stated that

the reason why the accused's wife was not called to testify on his behalf was because her story would have been contrary to his testimony. We therefore held the comment was error since, to hold otherwise, would permit the state to accomplish indirectly what it could not do directly, to-wit: Use the wife's testimony against her husband.

■ However, the general rule is that where the wife of the accused in a criminal case might be a material witness in his behalf, and she is not placed upon the stand by him, nor her absence accounted for, failure to produce her as a witness to testify is a legitimate matter for comment in the argument of the case. *Hilyard v. State*, 90 Okl.Cr. 435, 214 P.2d 953 (1950).

■ In the instant case the prosecutor did not comment on what the missing wife would have testified to. He only commented on her absence and that her testimony would have been material to the defendant. We find no reversible error and the last assignment is without merit.

From our examination of the record as a whole it is our opinion that the defendant received a fair and impartial trial, that no substantial right of the defendant was prejudiced and that the judgment and sentence appealed from should be, and the same is hereby *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.