Warner Houston IRVIN, Sr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–378.

Court of Criminal Appeals of Oklahoma.

Aug. 29, 1980.

Robert A. Ravitz, Asst. Public Defender, Oklahoma County, John M. Stuart, Kee, Kramer & Stuart, Duncan, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Danny K. Shadid, Legal Intern, Oklahoma City, for appellee.

## OPINION

CORNISH, Presiding Judge:

Warner Houston Irvin, Sr., was convicted in the Oklahoma County District Court, Case No. CRF–76–4351, of the offense of Murder in the First Degree. His punishment was fixed by a jury at death. Formal judgment and sentencing was imposed by the Honorable Floyd Martin, District Judge, on March 7, 1977. On appeal, the appellant urges 22 allegations of error.

Laws 1976, lst Ex.Sess., Ch. 1, § 7, now 21 O.S.Supp.1976, § 701.13, requires review of the propriety of every death sentence. Although this review is in addition to allegations of legal error by direct appeal, the court may and does hereby direct that the appeal and the sentence review be consolidated. Section 701.13 also provides for oral argument and submission of briefs by both the appellant and the State. Oral argument in this case was held on the 17th day of January, 1980.

The evidence at trial shows that the appellant and the victim, Robert Lynn May, were formerly co–employees of the Purolator Security Company. Prior to his termination of employment, the appellant had trained May as a Purolator driver for his route.

At approximately 5:30 p. m. on November 6, 1976, a Purolator van driven by May made a pickup at Casey's Food Mart on South Portland in Oklahoma City. May was met by the appellant outside Casey's. The van was then seen being driven to the north parking lot of Casey's, followed by a white Buick Riviera.

Subsequently, the van was seen with its right door open, and the Buick was observed with its open trunk containing "pillow cases or something." White money sacks were normally used by Purolator on pickups and deliveries. Soon thereafter,

the van was engulfed by fire, and it was discovered that the money was gone from the van.

May's bullet–riddled body was found on November 21, 1976, in a barren field north of 63rd Street and Jerico in Oklahoma City. He had been shot five times. Abrasions were found on both wrists. This supported the State's theory that he had been bound in order for the appellant to carry out the murder without resistance.

I

## DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S MOTION FOR CONTINUANCE?

■ It is first argued that the trial court's order overruling the appellant's motion for continuance was violative of 22 O.S.1971, § 584, his constitutional rights to effective assistance of counsel, and a fair and impartial trial. Pursuant to § 584, the trial court, upon sufficient cause shown by either party, may direct postponement of a criminal trial. However, it is well settled that a motion for a continuance is addressed to the sound discretion of the trial judge, whose ruling will not be disturbed absent a clear showing of abuse of discretion. *Bowman v. State*, Okl.Cr., 585 P.2d 1373 (1978).

■ The appellant sets forth four propositions in support of this abuse of discretion. The first is that this would have been the first continuance granted to the appellant, and the State would not have been prejudiced thereby. This argument is unsupported by reasoning or authority and, thus, is without foundation. It is next argued that a continuance should have been granted because a material witness for the defense was absent from the jurisdiction. We find the trial court acted within its sound discretion as there was no showing that this witness would ever be found nor was any evidence offered as to this witness' whereabouts. Third, the appellant petitioned for a 30 day continuance because of a change in personnel at the Public Defender's Office of Oklahoma County. We note that while there was an administrative change in the Public Defender's Office, filled by Mr. Tom Elliott, the Assistant Public Defender, Mr. Bob Tudor was the attorney to whom the case was assigned. The record reflects it was Mr. Tudor who admirably represented the appellant and argued the case from the preliminary hearing until a verdict was reached. Only in the second stage of the bifurcated trial did Mr. Elliott argue the case to the jury, again effectively representing the appellant.

■ It is next urged that the trial court erred in failing to grant a continuance when the prosecutor failed to deliver discoverable material to the appellant until the day of the trial. This evidence pertained to statements given police offices involving the failure of a witness endorsed by the State to positively identify the appellant at the lineup and further related to the results of a polygraph test administered to the appellant. We find no prejudice relating to the polygraph test because the results thereof are inadmissible at trial for any purpose. This issue will be more thoroughly considered, infra, under the appellant's fourth assignment of error.

■ Moreover, the argument that additional trial preparation time was needed because this homicide was a case of first impression under a new statute is untenable. Although Laws 1976, 1st Ex.Sess., Ch. 1, § 1, now 21 O.S.Supp.1979, § 701.7, was adopted seven months prior to this trial, the substantive elements of the crime of Murder in the First Degree remained unchanged. The new statutory scheme was enacted only in compliance with rulings of the United States Supreme Court in dealing with the arbitrary and selective imposition of the death penalty.

■ Finally, error is urged in the court's failure to allow the appellant additional time to prepare for the second stage of the proceedings dealing with aggravation and mitigation. The Supreme Court cases relied upon by the appellant are not applicable. Furthermore, we fail to see how the appellant was prejudiced where, as here, the State put on no evidence whatsoever

during the second stage of the proceedings, but only argued the evidence presented at the first stage of trial in support of aggravation. We, therefore, conclude the trial court did not abuse its discretion in overruling the appellant's motion for a continuance at the second stage of the proceeding.

## II

### DID THE TRIAL COURT ERR IN DENYING THE APPELLANT'S MOTION FOR A CHANGE OF VENUE?

■ The appellant claims he was deprived of a fair and impartial trial by the trial court's denial of his motion for a change of venue. He states that there existed a widespread climate of public shock and adverse pretrial publicity which was unduly prejudicial.

This argument can be rejected on any one of several grounds. First, the appellant failed to comply with the statutory procedure for change of venue provided by 22 O.S.1971, § 561.[1] Second, the alleged error was not specifically incorporated in his motion for new trial or in the petition in error.

However, we have carefully reviewed the voir dire examination, and it reflects that the jurors were adequately screened and that the appellant challenged only five jurors. The appellant has failed to demonstrate to this Court by the record that the jurors did not render a decision based on the evidence presented. The request for a change of venue was properly denied.

## III

### DID THE TRIAL COURT ERR IN DENYING THE APPELLANT'S MOTION FOR INDIVIDUAL VOIR DIRE OF PROSPECTIVE JURORS?

■ We deemed unnecessary a lengthy discussion of this claim of error. Relied

upon are the American Bar Association Standards Relating to a Fair Trial and Free Press, and a number of cases, including *Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).[2] No authority, however, has been brought to the attention of this Court, nor have we found any, *mandating* that individual vior dire be allowed under any circumstances. To the contrary, this Court, when presented with the identical proposition of error, stated in *Vavra v. State*, Okl.Cr., 509 P.2d 1379 (1973), that the individual examination of prospective jurors was within the discretion of the trial court. We hold this case is dispositive of the issue.

## IV

### WAS THE APPELLANT DENIED A FAIR AND IMPARTIAL TRIAL AS A RESULT OF MISCONDUCT BY THE PROSECUTOR IN FAILING TO COMPLY WITH THE COURT'S RULING UPON THE APPELLANT'S MOTION FOR DISCOVERY?

The appellant next reurges a portion of his earlier argument in support of his motion for continuance. He claims the prosecutor's late compliance with the trial court's order directing disclosure of certain evidence to the defense violated his right to a fair trial.

The complaint of nondisclosure relates to the lack of a positive post–arrest lineup identification of the appellant by State's witness Barbara Mitchell and the results of a polygraph test administered to the appellant. While the State submits it fully complied with the court's order, the appellant asserts the lineup and polygraph results were partially exculpatory and that the prosecution had an absolute duty to turn over all exculpatory evidence under *Brady*

---

1. Title 22 O.S.1971, § 561, mandates that the appellant must file a petition verified by affidavit, and further supported by the affidavits of at least three credible persons residing in the county. Here, the appellant's petition was unverified, and no affidavits were attached.

2. Also relied upon are *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *People v. Mordino*, 58 App.Div.2d 197, 396 N.Y.S.2d 737 (1977); and *Silverthorne v. United States*, 400 F.2d 627 (9th Cir. 1968), and 430 F.2d 675 (9th Cir. 1970); *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971).

*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3]

The motion for discovery included a request for all evidence in the possession or within access of the prosecution and a general request for exculpatory evidence. The Court ordered copies of any and all oral or sworn statements obtained from the appellant or supporting witnesses. The State turned over copies of both sworn and unsworn statements made by witnesses to the police department. According to the appellant, it appeared the statements had been "cut and pasted," and where therefore incomplete.

On the day of trial, the court ordered the prosecution to deliver the additional parts of the statements. The evidence given to the appellant's attorney was the result of a lineup on November 10, 1976, at which State's witness Barbara Mitchell said that the appellant looked like the perpetrator of the crime, but that she could not make a positive identification in court. The appellant argues this was exculpatory evidence which might have led to additional exculpatory evidence. It is also urged that the results of the appellant's polygraph test indicated it was unclear as to whether or not he had seen May; though it did indictate some guilty knowledge of the theft of the money.

■ We held in *McDonald v. State*, Okl. Cr., 553 P.2d 171 (1976), that the failure to disclose. information not specifically requested is not error unless it is material evidence within the meaning of *Brady v. Maryland*, supra, and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In the latter case, the Supreme Court enunciated the standard of materiality: Only undisclosed evidence which creates or tends to create a reasonable doubt that did not otherwise exist as to guilt is material in the constitutional sense.

■ Although the appellant complains of the lack of a positive post–arrest lineup

identification by Ms. Mitchell, this witness made a positive in court identification (Tr. 182). Furthermore, the defense did not cross–examine her, following delivery of the lineup results. Additionally, there was the positive identification of the appellant by witness Mary Driskell (Tr. 168), a shopper at Casey's Food Mart on the evening of the crime.

The evidence of both lineup and polygraph results, in light of the entire record, fails to create a reasonable doubt that did not otherwise exist. We, therefore, find that failure to disclose this evidence until the day of trial did not deprive the appellant of a fair. trial.

V

## DID THE TRIAL COURT ERR IN DENYING THE APPELLANT'S MOTIONS FOR PRETRIAL PRESENTENCE REPORT AND FOR APPOINTMENT OF A PSYCHIATRIST?

■ Under the appellant's claim that the State had the duty to provide him with a pretrial presentence report, we note his citations of authority are not in point. Further, we are unaware of any authority mandating a pretrial presentence report in a capital case.

Relying on *United States ex rel. Smith v. Baldi*, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953), and *United States ex rel. Robinson v. Pate*, 345 F.2d 691 (7th Cir. 1965), affirmed in part and remanded in part on other grounds, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), it is contended that in a murder case where the State requests the death penalty it is incumbent upon the State to make funds available to the defense counsel to hire experts. However, this Court considered the appellant's cited authorities in *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973). Therein, we said "*Robinson* does not anywhere state that an indigent defendant must be furnished with a

---

**3.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), found the withholding by the prosecution of evidence favorable to an accused upon request violative of

due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution.

private psychiatrist at State expense." We also recognized *United States v. Baldi*, supra, as rejecting the argument as insufficient to show a constitutional violation.

More recently in *Bills v. State*, Okl.Cr., 585 P.2d 1366 (1978), we said:

> With reference to the trial court's failure to provide funds for an investigator and an independent psychiatrist, this Court in *Huitt v. State*, Okl.Cr., 562 P.2d 873 (1977), recently reaffirmed its decision in *Hardt v. State*, Okl.Cr., 490 P.2d 752 (1971), that under the statutes of the State of Oklahoma trial courts are without authority to comply with such requests. See also *Bias v. State*, Okl.Cr., 561 P.2d 523 (1977).

Although the appellant's claim is premised on the uniqueness of capital cases, we find no authority holding that the State has the responsibility of funding the defense of an indigent charged with a capital crime beyond providing counsel pursuant to the Sixth Amendment.

## VI

DID THE TRIAL COURT ERR IN OVER-RULING THE APPELLANT'S MOTION IN LIMINE TO PRECLUDE THE STATE FROM INTRODUCING TESTIMONY OF A PROSPECTIVE STATE'S WITNESS AND IN ALLOWING INTRODUCTION OF THIS TESTIMONY?

The next alleged error concerns the trial court's admission of the testimony of Monica Louise Mason, one of the State's witnesses. Defense counsel objected on the grounds of relevance, remoteness, and potential prejudicial effect. Her testimony related to a statement made by the appellant seven or eight months prior to the alleged crime. Ms. Mason testified that the appellant mentioned to her that he might be able to plan an armored car robbery, but that whoever drove the truck would have to die.

The only case cited by the appellant is *Dickey v. State*, 97 Okl.Cr. 28, 257 P.2d 319 (1953). The Court there said that evidence will not be rejected due to alleged remoteness to the crime where it appears relevant to the offense charged; and the admissibility thereof rests in the sound discretion of the trial court and will not be overturned absent an abuse of discretion. The appellant urges that the obvious negative implication of the language in *Dickey* is that where such evidence is so remote in point of time that it cannot reasonably be said to shed light on the guilt or innocence of the accused it should be rejected.

While the State fully agrees with *Dickey*, it states the critical question is whether the statement of the appellant was relevant to the offense charged. Cited as being directly on point is *State v. Mastracchio*, 112 R.I. 487, 312 A.2d 190 (1973). In that case, the defendant was convicted of the murder of an armed guard during the robbery of a Brink's armored truck. Statements made by the defendant two years prior to the robbery–murder, revealing plans to commit a crime almost identical to the crime committed, were admitted at trial. In affirming the trial court's ruling, the Rhode Island Supreme Court said:

> We agree that evidence of a disposition to commit a crime or evidence of prior criminal conduct is inadmissible to prove the crime charged. *State v. Harris*, 89 R.I. 202, 152 A.2d 106 (1959); *State v. Durkee*, 68 R.I. 73, 26 A.2d 604 (1942); *State v. Horton*, 47 R.I. 341, 133 A. 236 (1926). However, an exception to this rule is that such conduct may be shown where it is connected with the offense charged in such a way that it tends to establish an intent, motive, plan, design or scheme. *State v. Mancini*, 108 R.I. 261, 267, 274 A.2d 742 (1971); *State v. Colangelo*, 55 R.I. 170, 173–174, 179 A. 147 (1935).

> Mastracchio's plan as revealed to Rylance was nearly identical to the actual robbery at Hood's. There is no doubt that it tended to establish a plan to commit the crime charged. The remoteness in time between the revelation of the plan and the actual robbery affects only the weight of the evidence and not its admissibility.

We therefore hold that there was no error in admitting Rylance's testimony.

Finding that case persuasive, we hold there was no error in the admission of Ms. Mason's testimony. We do not consider the eight–month–old remark too remote so as not to be of probative value. Rather, it is indicative of the appellant's plan and intent to commit the alleged crime.

## VII

### DID THE ADMISSION INTO EVIDENCE OF COLOR PHOTOGRAPHS OF THE VICTIM CONSTITUTE PREJUDICIAL ERROR?

█ Complained of in this appeal is the admission into evidence of State's Exhibits Nos. 56, 57, 61, and 62, graphic color photographs of the wounds of the victim. The appellant submits the photographs did not have sufficient probative value to overcome their prejudicial effect. Having carefully examined the Exhibits in question, we find the photographs served to illustrate the medical examiner's testimony and accurately depicted the five bullet holes in the victim's body.

It is well settled that the admissibility of photographs is within the sound discretion of the trial court. *Asberry v. State*, Okl. Cr., 564 P.2d 648 (1977); *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975). In *Oxendine v. State*, Okl.Cr., 335 P.2d 940 (1958), we set out guidelines for the admissibility of photographs:

[2.] If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course be excluded. [3.] On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidentally arouse the passion of the jury.

We hold the photographs here are not so gruesome as to cross the line from probative value to prejudicial effect. The trial court did not err in admitting this evidence.

## VII

### DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY AND PROVIDE APPROPRIATE VERDICT FORMS WITH REGARD TO THE OFFENSE OF MURDER IN THE SECOND DEGREE?

The appellant and the State concede that the court should submit appropriate instructions based upon the evidence. The question then becomes whether the evidence presented warranted a second degree murder instruction.

The appellant argues that the crime committed was embezzlement, which was not a predicate felony under Laws 1976, 1st Ex. Sess., Ch. 1, § 1, now 21 O.S.Supp.1979, § 701.7.

█ The appellant points out that May and the appellant were friends; that May had prior financial difficulties; and that May and the appellant had been engaged in friendly conversation outside Casey's Food Mart prior to the fire involving the Purolator van. What he fails to mention, however, is that May's wrists showed abrasions as if cuffed or bound, thereby supporting the State's armed robbery and kidnapping theory. We find no affirmative evidence showing any involvement by Robert May. We, therefore, hold that the trial court was correct in denying the instruction on murder in the second degree. As was stated in the early case of *Jones v. State*, 12 Okl.Cr. 255, 154 P. 689 (1916), where there is no evidence to support a lower degree of the crime charged or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider the issue. See also *Gist v. State*, Okl.Cr., 509 P.2d 149 (1973), and *Carlile v. State*, Okl.Cr., 493 P.2d 449 (1972).

## IX

### DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT ON THE NEXUS REQUIRED BETWEEN THE HOMICIDE AND THE PREDICATE FELONY NECESSARY TO A FINDING OF FIRST DEGREE MURDER?

██ The appellant next contends the trial court erred in refusing to accept his requested instruction No. 5 and in refusing to define the phrase, "in the commission of a felony," for purposes of the felony–murder rule, i. e., the nexus required between the felony and the homicide. As pointed out by the State, the appellant cites no specific authority in his brief defining the phrase nor any authority requiring such a definition be included in jury instructions.

The State submits, and we agree, that the omission claimed was actually part of the instructions defining robbery and kidnapping. Pursuant to those instructions, the jury was told that if they found the appellant took May's life while committing robbery or kidnapping as defined in the instructions, then they must find the appellant guilty of Murder in the First Degree. If they could not reach an affirmative decision beyond a reasonable doubt, they were instructed to acquit the appellant.

██ Additionally, citing 58 A.L.R.3d 851, it is asserted the trial court failed to delineate in the instructions what constitutes the termination of the felony for purposes of the felony–murder rule. The appellant argues that the felony had been concluded and that the appellant had gained his place of safety, thereby terminating the purposes of the felony–murder rule.

4. Laws 1976, 1st Ex.Sess., Ch. 1, § 5, now 21 O.S.Supp.1979, § 701.11, provides:

In the sentencing proceeding, the statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in the charge and in writing to the jury for its deliberation. The jury, if its verdict be a unanimous recommendation of death, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstance or circumstances which it unanimously found beyond a reasonable doubt. In non-

A similar question was raised in *Clark v. State*, Okl.Cr., 558 P.2d 674 (1977), involving a hostage taken during an armed robbery. The homicide occurred minutes after the robbery within a few miles of the bank. Presumably, the perpetrators were trying to avoid detection and implement their escape. Relying on *Oxendine v. State*, Okl. Cr., 350 P.2d 606 (1960), this Court said:

> ... It is our intention to adopt the 'res gestae' interpretation in disposing of this assignment of error: if the homicide is committed during the one, continuous transaction, the acts are so closely connected as to be inseparable in terms of time, place and causal relation, and the actions tend to be explanatory and incidental to each other, the homicide has been committed during the felony in our statutory sense.

Similarly, in the case before us, the homicide occurred as part of one continuous transaction by the appellant: to effectuate his escape from detection and exert exclusive dominion and control over the monies transported in the armored van. We hold this allegation of error is without foundation.

## X

### DID THE TRIAL COURT'S INSTRUCTIONS DURING THE SECOND STAGE OF THE PROCEEDINGS CONSTITUTE FUNDAMENTAL AND REVERSIBLE ERROR?

██ Relying entirely on Laws 1976, 1st Ex.Sess., Ch. 1, § 5, now 21 O.S.Supp.1979, § 701.11,[4] the appellant argues error in the trial court's refusal to instruct the jury of the right to decline imposition of the death

jury cases the judge shall make such designation. *Unless at least one of the statutory aggravating circumstances enumerated in this act is so found or if it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed.* If the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose a sentence of imprisonment for life. (Emphasis added)

penalty. It is alleged that the ambiguity and inherent confusing nature of Instruction No. 24[5] submitted by the court and shown by the subsequent notes sent from the jury to the judge authorizes only three actions. Specifically complained of is the "conspicuous absence of an instruction regarding that if an aggravating circumstance or circumstances are found ... or that such circumstance or circumstances outweighs the finding of one or more mitigating circumstances, that the jury may still decline to impose a sentence of death and sentence the defendant to life imprisonment."

It is not surprising that the appellant's argument is unsupported by citation of authority. He clearly misconstrues Section 701.11. The only discretion provided the jury under the statute is that necessary to make a factual finding of the existence or nonexistence of aggravating and mitigating circumstances, as well as the discretion requisite in balancing the two. A careful reading of that statute in conjunction with the given Instruction No. 24 (see footnotes 4 and 5) reflects compliance with Oklahoma law.

## XI

DID THE TRIAL COURT ERR IN FAILING TO SUBMIT THE APPELLANT'S REQUESTED INSTRUCTION DEFINING THE TERMS "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL"?

A reading of the appellant's brief indicates that the trial court did not instruct the jury as to the definitions of the words, "heinous," "atrocious," and "cruel."

However, a review of the appellant's requested instruction and the court's Instruction No. 22 reflects that the trial court did instruct the jury as to the definitions of these terms. In fact, precisely the same definitions contained in the appellant's requested instruction were used by the court.

The following additional phrase was used in the appellant's requested instruction:

> You are further instructed that the aggravating circumstance requiring you to consider whether or not the murder was especially heinous, atrocious or cruel is directed only at the conscienceless or pitiless crime, which is unnecessarily tortious [sic] to the victim.

This statement is quoted in the appellant's brief as being taken from *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), but the appellant misquotes *Proffitt*. This language is not a direct quote from the United States Supreme Court opinion. Rather, it is quoted as the language used by the Florida Supreme Court in several cases and acknowledged by the Court in *Proffitt* as the law in Florida.

In footnote 12 of *Proffitt*, the Court notes that the Florida Supreme Court in several cases affirmed death sentences where the aggravating factor of "heinous, atrocious or cruel" was found, without specifically stating the homicide was pitiless or torturous to the victim. See *Spinkellink v. State*, 313 So.2d 666 (Fla.1975); *Alvord v. State*, 322 So.2d 533 (Fla.1975); *Dobbert v. State*, 328 So.2d 433 (Fla.1976). The Supreme Court indicated in *Proffitt* that the phrase "especially heinous, atrocious or cruel" cannot be construed as providing inadequate guidance to those charged with the duty of recommending or imposing sentences in capital

---

5. Instruction No. 24 reads as follows:

In the event you find unanimously that one or more of these aggravating circumstances existed beyond a reasonable doubt, then you would be authorized to consider imposing a sentence of death.

If you do not find unanimously beyond a reasonable doubt one or more of the statutory aggravating circumstances existed, then you would not be authorized to consider the penalty of death, and the sentence would be imprisonment for life.

Even if you find unanimously one or more of the aggravating circumstances existed beyond a reasonable doubt, and if you further find that such aggravating circumstance or circumstances is outweighed by the finding of one or more mitigating circumstance, then and in such event the death penalty shall not be imposed, and the sentence would be imprisonment for life.

cases. Nowhere, however, does the Supreme Court indicate such language is mandatory. We conclude this additional statement contained in the second portion of the appellant's requested instruction added nothing to the definition of the terms previously defined. We hold the trial court correctly instructed the jury as to the definition of "especially heinous, atrocious or cruel."

## XII

WAS THERE PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS OF THE SECOND STAGE OF THE TRIAL WHICH PREJUDICED THE APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL?

The appellant's twelfth and thirteenth allegations of error, having commonality in subject, will be discussed together. First, it is argued that the Assistant District Attorney's comments during closing argument in the second stage of the trial constituted a misstatement of the law, and denied him a fair and impartial trial. Specifically referred to was Mr. McKinney's comment to the jury that they could consider the eight statutory mitigating circumstances but "you are not required to consider them and you can consider anything else in the way of mitigation. It goes past this number eight."[6]

The law in this state is clear that prejudicial remarks during the second stage of a bifurcated proceeding, following a guilty verdict, can only result in modification if necessary, but not reversal. *Barnhart v. State*, Okl.Cr., 559 P.2d 451 (1977); *Satterlee v. State*, Okl.Cr., 549 P.2d 104 (1976), and *Webb v. State*, Okl.Cr., 546 P.2d 642 (1976).

While the appellant's objection to the statement regarding–"mitigating circumstances" was sustained by the trial judge, the appellant argues that the court's

admonishment and statement to the jury that they *must* consider those "mitigating circumstances" was futile. We disagree. This Court has held that the trial court's admonition to the jury to not consider the remarks of counsel usually cures any error unless of such a nature after considering the evidence that the error appears to have determined the verdict. *Gowler v. State*, Okl.Cr., 589 P.2d 682 (1979); *Holdge v. State*, Okl.Cr., 586 P.2d 744 (1978). Here, after a thorough review of the closing argument, we cannot say that this alleged misstatement of the law determined the verdict.

Citing only one case, *Prevatte v. State*, 233 Ga. 929, 214 S.E.2d 365 (1975), the appellant further contends the prosecutor diverted the jury's attention from its duty to decide the case by alluding to appellate judicial review, thereby diminishing the consequences of the jury's verdict. The language condemned in *Prevatte* is detailed concerning appellate review and distinguishable from the present case where the complained of comment was:

> Ladies and gentlemen, you do bear a responsibility, you do bear a burden and so do I and so does Judge Martin who must accept your verdict and so do the other Courts who will review it.

While we would agree that the prosecutor should refrain from remarks which would divert the jury from its duty to render a verdict based on the evidence, by alluding to the consequences of the jury verdict, we find no error warranting modification of the sentence.

## XIII

DID THE TRIAL COURT ERR IN SUBMITTING SUPPLEMENTAL INSTRUCTION NUMBER ONE (1) TO THE JURY FOLLOWING RECEIPT OF A NOTE FROM THE JURY REGARDING PARDON AND PAROLE?

The appellant alleges error in the trial court's giving of the following supple-

---

**6.** Appellant's counsel objected to this remark and it was sustained by the trial judge. The judge further admonished the jury that they "must" consider the mitigating circumstances which were given to them in Instruction No. 23.

mental instruction, over defense counsel's objection, after the jury inquired as to the definition of life in prison and whether the appellant would be eligible for parole:

> You are further instructed that the duties and obligations of the Pardon and Parole Board are separate and distinct from the duties and obligations of the jury. It would not be proper for you to consider what the Pardon and Parole Board may or may not do with any person convicted of a crime.

It is argued that the trial court improperly injected the administrative procedures regarding the Pardon and Parole Board into the judicial process.

Three cases relied on in support of the appellant's argument are *Evans v. State*, Okl.Cr., 541 P.2d 269 (1975); *Sam v. State*, Okl.Cr., 523 P.2d 1146 (1974); and *Bell v. State*, Okl.Cr., 381 P.2d 167 (1963). All three are distinguishable from this case as involving prosecutors who made remarks to the jury regarding the pardon and parole system.

The situation before us is not unlike that presented in *Gaines v. State*, Okl.Cr., 568 P.2d 1290 (1977). There, the trial court answered a jury question concerning the amount of time which would need to be served before a defendant would be eligible for parole:

> My answer is that those are not matters for their consideration, that those are matters for the parole board to determine.

In responding to the defendant's suggestion that the trial court's statement was fundamentally erroneous as drawing the jury's attention to parole policies, we said in *Gaines*:

> ... We find it apparent from the jury's question that they were already aware of the possibility of parole. The trial court did not define the parole process in general. The jury was merely informed that parole was not a matter for their concern,

but was for the parole board to determine. The trial court's answer is in compliance with 22 O.S.1971, § 894, and is not error. See *Hair v. State*, Okl.Cr., 532 P.2d 72 (1974).

We therefore find no merit to the appellant's argument.

## XIV

DID THE TRIAL COURT ERR IN COMMUNICATING WITH THE JURY SUBSEQUENT TO THE RETURN OF THE LIFE IMPRISONMENT VERDICT AND PRIOR TO THE VERDICT OF DEATH, AND DID THE TRIAL COURT'S ACTION CONSTITUTE A DIRECTED VERDICT?

Because the subject matter is closely related, the appellant's next two allegations of error will be considered together. To fully understand the arguments presented, a few background facts are essential. On the last day of trial at approximately 2:30 p. m., the jury retired to deliberate. They later sent a note to the judge seeking a definition of "life in prison," and inquiring whether the appellant would be eligible for parole. The judge responded with Supplemental Instruction No. 1, discussed under the previous proposition of error.

Around 5:00 p. m., the trial court learned the jury had reached a verdict, and the panel was returned to the courtroom. The judge inquired of the jury foreman whether the jury had reached a verdict, and the foreman replied affirmatively. The verdict, life imprisonment, was received by the court, read by the clerk, and recorded. The judge then asked the jury whether it was the verdict of each and every member, and the foreman answered in the negative. The trial judge then retracted and vacated his order that the verdict would be received. He sent the jury back for additional deliberation, stating he could not accept any verdict which was not unanimous.[7] Finally,

---

7. The record reflects the following transpired:
   THE COURT: The Court will receive the verdict, order that it be read by the Clerk and then recorded.

   THE CLERK: 'State of Oklahoma vs. Warner Houston Irvin, Sr.
   'We, the jury, empanelled and sworn in the above entitled cause, having heretofore found

upon further deliberation, the jury returned to the courtroom with a verdict of death.

The appellant's argument is two–fold: (1) that the trial court's action constituted a directed verdict, and (2) that the court erred in refusing to take the case from the jury after three hours of deliberation and enter a sentence of life imprisonment, pursuant to Laws 1976, 1st Ex.Sess., Ch. 1, § 5, now 21 O.S.Supp.1979, § 701.11.

The State submits, relying on *Cities Services Oil Company v. Kindt*, 20 Okl.Cr. 64, 190 P.2d 1007, 1013 (1948), that the only true verdict was the verdict of death because the Supreme Court of Oklahoma has stated that by definition a verdict is the unanimous determination of twelve jurors. See *Williams v. Pressler*, 11 Okl.Cr. 122, 65 P. 934 (1901). The initial verdict, it is argued, was not a verdict at all.

The applicable statute here is 22 O.S.1971, § 922, which provides:

When the verdict is given, and is such as the court may receive, the clerk must immediately record it in full upon the minutes, and must read it to the jury and inquire of them whether it is their verdict. If any juror disagree, the fact must be entered upon the minutes, and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case.

For the reasons hereinafter stated we must agree with the appellant. The prob-

lem here originated with an erroneous instruction, was compounded by the trial court's lack of proper procedure in receiving the verdict, and was further compounded by the court's direction to the jury to return to the jury room to reach a unanimous verdict.

■ Support for this position exists in our general criminal procedure statutes. Most pertinent of those statutes is 22 O.S. 1971, § 927, which first pertains to the verdict of guilty, but then provides further, "Where the jury find a verdict of guilty, and fail to agree on punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly." The reading of that statute clearly indicates that, since 1910, our laws have provided for a judicially assessed punishment in the case of a hung jury, in the punishment phase in ordinary criminal trials. Stated another way, should the jury be unable to reach unanimity in the decision on punishment, *it is the responsibility of the court to render that decision.*

■ An additional section of that chapter also relates to this decision. Section 921 provides for polling prior to recording. As the facts of this case indicate, the recording of the verdict occurred prior to the court's determination of nonunanimity among the jurors. This is particularly crucial in a trial of this magnitude. The appellant had al-

the defendant, Warner Houston Irvin, Sr., Guilty of Murder in the First Degree, do, upon our oaths, fix his punishment by imprisonment for life in the custody of the Department of Corrections of the State of Oklahoma.

'Frank V. Hinson, Foreman.'

THE COURT: Ladies and gentlemen of the jury, is that the verdict of each and every member of the jury?

MR. HINSON: No, sir.

THE COURT: I beg your pardon, Mr. Hinson? It is not the verdict of all the jurors?

MR. HINSON: No, sir.

THE COURT: May I have the verdict form, please?

THE CLERK: Yes.

(The Clerk complied.)

THE COURT: Mr. Hinson, in view of what you have told me, as I have asked you wheth-

er that is the verdict of each member of the jury, I call the attention of the jury to the instructions which say that any verdict must be unanimous.

I am not allowed to accept any verdict which is not the unanimous verdict of all the jurors. Now, at this point, I want to make certain that we understand what we are saying and I inquire of you again, Mr. Hinson, is this the verdict of each member of the jury?

MR. HINSON: No, sir.

THE COURT: Then I must retract and vacate my order that the verdict will be received. I instruct the jury that you must return to the jury room for further deliberation. I am not able to accept a verdict that is not unanimous on the part of each juror.

You may leave the courtroom.

(Whereupon, the jurors complied and were excused.)

ready been found guilty of first degree murder in the first stage. He knew that punishment would be one of two options, life or death. The reading and recording of the life sentence indicated that he had received the lesser of the two alternatives. To then subject him to the confusion attendant to an erroneously received and recorded verdict and a redetermination of that sentence to capital punishment is to render what should have been an organized and businesslike procedure to one that was disorganized and frenetic. For this Court to uphold such a procedure is for us to sanction a lack of ceremony and dignity at, perhaps, justice's most crucial hour.

Therefore, we believe that the appellant is correct in asserting that the trial court's action constituted a directed verdict and compels this Court to modify this decision to life imprisonment, and, as modified, affirm the judgment and sentence. In view of our disposition of this case, we deem unnecessary a discussion pertaining to the remaining assignments of error.

The judgment and sentence appealed from should be and the same is, hereby, *MODIFIED* from a sentence of death to life imprisonment and, as so modified, is *AFFIRMED.*

BRETT, J., specially concurs.

BUSSEY, J., dissents.

BRETT, Judge, specially concurring:

I concur and am compelled to expand upon the majority's treatment of the final assignments of error under Section XIV, supra.

There is a statute more specifically on point, and the rules of statutory construction favor not only that statutes be interpreted consistently with each other but also that specific statutes take precedence over general statutes. See C. D. Sands, *Sutherland's Statutory Construction* (4th Ed. 1972), § 51.02, Statutes on the Same Subject Construed Together.

As the majority states, even ordinary criminal trials can result in a judicial verdict of punishment when the jury cannot reach a unanimous punishment verdict. This, however, was a capital case. The question that becomes crucial is: Must the jury's punishment verdict be unanimous? The answer is compound: Yes, the jury must reach a unanimous determination of the death penalty; and no, the jury is not required to reach a unanimous verdict. The statute provides, "If the jury cannot, within a reasonable time, agree as to punishment, the judge *shall* dismiss the jury and impose a sentence of imprisonment for life." Laws 1976, 1st Ex.Sess., Ch. 1, § 5. Now 21 O.S.Supp.1979, § 701.11. [Emphasis added.] An earlier portion of that same section, "The jury, if its verdict be a unanimous recommendation of death, . . ." is written in the subjunctive and includes the adjective "unanimous." Clearly, this anticipates the situation here where the jury returned, after several hours, unable to unanimously assess death. The statutory consequence is that life imprisonment must be imposed by the judge.

BUSSEY, Judge, dissenting:

I respectfully dissent. When the judge ascertained that the verdict was not a proper one, i. e., non–unanimous, he complied with the provisions of 22 O.S.1971, § 922 by sending the jury back out to deliberate.

The only proper verdict returned in the penalty stage of this case was the verdict of death, and it was amply supported by the evidence presented in aggravation punishment by the State.